Peter Strojnik, 6464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation, ) ) ) Plaintiff, ) ) vs. ) ) THE ENERGY BULL, an unknown entity; UNKNOWN DEFENDANTS 1-20, ) Defendants. ) ) | NO. **CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND FOR DAMAGES ARISING OUT OF TRANSMISSION OF UNSOLICITED FAXES - 47 U.S.C. § 227** **REQUEST FOR TRIAL BY JURY** |

Plaintiff alleges, on Plaintiff's on behalf and on behalf of a class and subclass of persons defined below, as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1) Plaintiff is an Arizona Professional Corporation authorized to and conducting business in Maricopa County, State of Arizona.

2) Defendant The Energy Bull is a front for the Unknown Defendants who desire to avoid liability pursuant to the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227 *et seq.*

-1-

3) Unknown Defendants are the persons and/or entities who engaged Defendant The Energy Bull to illegally promote the stock in a publicly traded company, Hybrid Technologies, Inc. by issuing unsolicited faxes to Plaintiff and the members of the Class and who desire to avoid liability pursuant to the TCPA.

4) Congress passed the 1934 Securities Act, 15 U.S.C. §§ 78a-78kk, to assure the disclosure of full and fair information to the investing public. See H.R. Rep. No. 73-1383, at 1-2 (1934) (describing the legislation's purposes). In relevant part, Section 10(b) of the 1934 Act proscribed the "use or employ[ment], in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). The ensuing Rule 10b-5, 17 C.F.R. § 240.10b-5, emerged in 1943. See *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737 (1975). Like Section 10(b), Rule 10b-5 prohibits "any act . . . which operates or would operate as a fraud or deceit upon any person" and makes it illegal "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b).

5) The illegal stock promotion facsimile was issued by Unknown Defendants in the classic "pump and dump" scheme "involve the touting of a company's stock (typically microcap companies) through false and misleading statements to the marketplace. After pumping the stock, fraudsters make huge profits by selling their cheap stock into the market." U.S. Securities and Exchange Commission at http:// www.sec.gov/answers/pumpdump.htm. See

also Thomas Lee Hazen, Law of Securities Regulation, §§ 2.2 n.80, 14.18 (5th ed. 2005). Pump and dump schemes constitute a securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5.

6) Defendants' pump and dump scheme was not disclosed to the investors and the potential investors through a filing of a Disclosure Form 8-K, and particularly section 8, item 8.01 thereof.

7) This Court has personal jurisdiction over Defendants by virtue of the following facts:

   a) Defendants caused at least one unsolicited fax to be sent to at least one recipient in the State of Arizona; and

   b) The State of Arizona has interest in providing a forum for its residents, including the Plaintiff and the Class identified herein; and

   c) It would be extremely burdensome for Plaintiff to access another forum; and

   d) Upon information and belief, Defendants continuously and systematically sent unsolicited faxes to the State of Arizona; and

   e) Defendants purposefully availed themselves of economic benefits and resources of the State of Arizona in conducting their business here; and

   f) Defendants may be hailed in court here under the liberal "effects" test in this tort action; and

   g) Defendants did and should have foreseen being hailed to Court in the State of Arizona.

8) As more fully set forth below, on or about May 20, 2008, Defendants sent an Unsolicited Fax to Plaintiff, Exhibit 1, in violation of TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000.00 for sending out the

Unsolicited Faxes. Upon information and belief, the cost for each fax is between 5 cents and 15 cents. This means that Defendants sent out between 133,334 and 400,000 Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages the sum of $500 to $1,500 for each Unsolicited Fax, or the total between 67 million and 600 million dollars.

9) This Court has original jurisdiction over this matter by virtue of the Class Action Fairness Act, 28 U.S.C. § 1332(d) requiring minimum diversity and the amount in controversy exceeding 5 million dollars. Actual diversity exists between Plaintiff and Defendants.

10) The venue is proper in this Court pursuant to 28 U.S.C. §§1391 *et seq.*

## CLASS ACTION ALLEGATIONS

11) This is a proposed class action suit brought on behalf of Plaintiff and on behalf of other persons and entities who received an unsolicited fax advertisement to their telephone facsimile machine by Defendants.

12) Plaintiff claims and alleges that Defendants' use of the telephone facsimile machine, computer, or other device to send an unsolicited facsimile advertisement to a telephone facsimile line violates the TCPA. This cause of action is specifically authorized pursuant to Arizona Revised Statutes § 44-1482(C).

13) Plaintiff brings this action in Plaintiff's individual capacity as well as on behalf of a class of persons and entities similarly situated (the "Class").

14) Plaintiff operates a law business located in Phoenix, Maricopa County, State of Arizona, and receives and has received unsolicited faxes that cause it damages due to the loss of its

paper and toner, the temporary loss of use of its facsimile machine and computer, the potential loss of business, and a violation of its right to privacy.

15) Defendants are, in part, in the business of marketing the stock of Hybrid Technologies, Inc.

16) On or about May 20, 2008, Plaintiff received an unsolicited fax from Defendants a copy of which is appended hereto. The sending of the Unsolicited Fax is unlawful under the TCPA.

17) As a direct and proximate result of Defendant's conduct heretofore described, Plaintiff suffered damages due to the loss of paper and toner, the temporary loss of use of its facsimile machine and the potential loss of business while its facsimile machine was in use.

18) This Class Action is brought and may be maintained pursuant to Rule 23, Federal Rules of Civil Procedure. Plaintiff seeks to represent a Class comprised of:

> All persons who received an unsolicited advertisement promoting
> Hybrid Technologies, Inc. stock via unsolicited facsimile

19) Plaintiff and members of the Class were recipients of Unsolicited Facsimiles in violation of the TCPA.

20) This action is properly brought as a class action pursuant to Rule 23, F.R.C.P., for the following reasons:

a) The Unsolicited Fax states on its face that the marketing firm sending out the fax was paid the sum of $20,000 for its service. Upon information and belief, a marketing firm sends out a fax at a cost of between 5 cents and 15 cents per fax. This means that between 133,334 and 400,000 faxes were sent.

b) The class is so numerous that joinder of all members is impracticable; and

c) There are questions of law or fact common to the class, to wit:

i) Whether Defendants violate the TCPA when sending the Unsolicited Faxes; and

ii) Whether the facsimiles that are the same or similar to Unsolicited Fax constitute "unsolicited advertisements" under TCPA; and

iii) Whether Plaintiff and the members of the Class are entitled to damages under the TCPA; and

iv) Whether Plaintiff and the members of the Class are entitled to treble damages under the TCPA; and

v) Whether Plaintiff and the members of the Class are entitled to injunctive relief under the TCPA; and

vi) Whether Plaintiff and the members of the Class are entitled to declaratory relief.

d) The claims or defenses of the representative parties are typical of the claims or defenses of the Class because all members of the Class received the same Unsolicited Fax; and

e) The named Plaintiff will fairly and adequately protect the interests of the class because:

i) Plaintiff seeks no relief that is antagonistic to the other members of the Class; and

ii) Plaintiff has no established business relationship with any Defendant or any potential additional Defendant; and

iii) Plaintiff shall vigorously pursue the claims of the Class; and

iv) Plaintiff has retained counsel with 28 years of experience in litigation matters and competent in representing the interests of the Class; and

v) Plaintiff's counsel has expended significant efforts in this matter and is learned in tracking down the sources of Unsolicited Faxes.

f) A Rule 23 Class Action is superior to any other available means for the adjudication of this controversy in the following particulars:

i) This action will cause an orderly and expeditious administration of the Class's claims; and

ii) The economies of time, effort and expense will be fostered; and

iii) Uniformity of decisions will be ensured at the lowest costs and with the least expenditures of judicial resources.

g) Because of the size of the Class, the expense and burden of individual litigation makes it impractical for the individual members of the Class to individually seek redress for the wrongs done to them.  Plaintiff believes that the members of the Class, to the extent they are aware of their rights against Defendants, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages warranted and/or the value of individual injunctive relief.  Hence, a class action is the only feasible means of recovery for the members of the Class.  Furthermore, without a class action, the members of the Class will continue to suffer damages and Defendants will continue to violate federal law, retaining and reaping the proceeds of their wrongful marketing practices.

h) Plaintiff does not anticipate any difficulty in management of this action because the evidence proving Defendants' violations of the TCPA is ascertainable through discovery.  The identities of the members of the Class are known to Defendants, and damages can be calculated from Defendants' records. This action poses no unusual difficulties that would impede its management by the Court as a Class action.

**COUNT ONE**
(Violation of the Telephone Consumer Protection Act)
(47 U.S.C. § 227 *et seq*)

21) Plaintiff realleges all allegations heretofore set forth.

22) Defendants or their agents used a telephone facsimile machine, computer, or other device to send unsolicited advertisements to telephone facsimile machines to Plaintiff and the members of the Class.

23) On information and belief, in each instance Defendants transmitted or caused to be transmitted unsolicited faxes to telephone machines themselves, or had a high degree of involvement in the transmission of the unsolicited faxes to telephone facsimile machines. For example:

a) Defendants knew that the transmitted faxes were advertisements;

b) Defendants participated in the preparation of their content;

c) Defendants provided or obtained the fax telephone numbers of Plaintiff and the members of the Class;

d) Defendants and members of the Class have no established business relationship;

e) Defendants compensated a third party for transmitting the unsolicited faxes to telephone facsimile machines; and/or

f) Defendants knew that Plaintiff and the members of the Class had not authorized the faxes' transmission by prior express invitation or permission.

24) As a direct and proximate result of said conduct, Plaintiff and members of the Class have sustained damages. Under the TCPA, Plaintiff and each member of the Class are entitled to

injunctive and declaratory relief enjoining Defendant's unlawful conduct, as well as incidental statutory damages.

25) As a result of said conduct, Plaintiff and members of the Class suffered property damage, and Defendant has invaded their privacy.

**COUNT TWO**
(Declaratory Judgment)

26) Plaintiff realleges all allegations heretofore set forth.

27) This count is brought pursuant to the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. § 13-1821 *et seq* and the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq*.

28) A justiciable controversy exists between Plaintiff and the members of the Class and Defendants regarding the legality of Defendants' unsolicited fax transmissions.

29) Defendants claim, or may claim, that their conduct in sending unsolicited fax transmissions does not violate the TCPA.

30) Defendants claim, or may claim, that they obtained express invitation or consent to send the faxes to Plaintiff and the members of the Class.

31) Defendants claim, or may claim, that they enjoyed an established business relationship with Plaintiff and the members of the Class.

32) Plaintiff claims that Defendants' practices violate the TCPA.

**COUNT THREE**
(Aiding and Abetting)

33) Plaintiff realleges all allegations heretofore set forth.

34) Defendants aided and abetted one another as follows:

a) The sender of the Unsolicited Faxes committed a violation of the TCPA; and

b) Defendants knew that the sender of the Unsolicited Faxes violated the Telephone Consumer Protection Act; and

c) The Defendants substantially assisted or encouraged the sender of the Unsolicited Faxes in the following non-exclusive actions:

   i) They provided the information contained in the Unsolicited Fax; and

   ii) They provided the opportunity to the sender of the Unsolicited Faxes to violate the TCPA; and

   iii) They sought the benefits of the Unsolicited Faxes; and

   iv) They failed to advise the securities holders and potential securities holders of Hybrid Technologies, Inc. 's securities that the securities are being manipulated in violation of law; and

   v) They accepted the benefits of the Unsolicited Fax.

35) Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

36) Defendants are responsible to Plaintiff and the Class as aiders and abettors for the same amount of damages as the principal violators of the TCPA.

## REQUEST FOR TRIAL BY JURY

37) Plaintiff requests a trial by a jury on all issues triable by a jury.

## RELIEF SOUGHT

Plaintiff prays for relief as follows:

a) For Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

-10-

b) For extraordinary, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to send unsolicited faxes; and

c) For judgment in the amount of $500.00 for each member of the Class for incidental statutory damages for each individual unsolicited fax received from Defendants; and

d) For judgment in the amount equal to three times the damages to Plaintiff and each member of the Class under the TCPA, to wit, $1,500.00 for each member of the Class; and

e) For a declaration that Defendants have violated the TCPA because they failed to obtain express invitation or consent to send the subject facsimiles to Plaintiff or the Class; and

f) For a declaration that Defendants violated the TCPA because they did not enjoy an established business relationship with Plaintiff or the members of the Class; and

g) For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provide by law; and

h) For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 2nd day of June, 2008.

PETER STROJNIK

_____
Peter Strojnik
Attorney for the Plaintiff

MAY.VOL.3                                                                                                                       May 21st 2008

# The Energy Bull
*"Providing Bullish picks in the Energy and Alt-fuel sectors".*

Congratlations to those who followed and invested wisely in Energy Bull's most recent pick **OTCBB: VNGM** which is now up **66%** since we recently published it **April 1st 2008.** We are commited to bringing you the very best picks from the Energy and Alternative fuel sectors.

| Hybrid Technologies Inc. (OTCBB: HYBR) | |
|---|---|
| Recent price: | $6.30 |
| Target Price: | $6.90 |
| Market Cap: | 52.42M |
| Rating: | **Strong Buy** |

### THE BULL'S BRAINS

For those of you unfamiliar with **The Energy Bull...**

"The Bull's Brains" is when we explain to you why we believe the current pick is a **WINNER**.

**Hybrid Technologies Inc. (OTCBB:HYBR)** is in the sexiest vertical going. Everyone's going green. From **George Clooney** (who's set to drive an HYBR smart car in Italy) to the everyday guy screaming about ridiculous gas prices -**$4.00/gallon a.k.a $100/barrel** . We consistently see green concept companies on the BB and Pinksheet market but few have a product line, money in the bank and international exposure like **HYBR** does. There are also rumors of shorted shares which could lead to a spectacular "short squeeze" that would drive the price of **HYBR** beyond analyst forecasts –See 2004 and 2006. With names like **Wal-Mart**, **NASA**, **Forbes**, **Business Week** and **Volkswagen** all in some way related to the company… it's just a matter of time before **HYBR** takes off. Did we mention this industry is valued at **$30 billion**. How about **Hybrid Technologies'** breakthrough which puts them miles (–bad joke yes we know) ahead of the competition.

**If you like what you saw with VNGM take a good hard look at HYBR and GET RIDING!**

### OTCBB:HYBR BREAKING NEWS

**Hybrid Technologies, Inc. (OTCBB:HYBR)** High Powered "Green Racing" Vehicle makes cover and feature story in NCMA's April Issue of Motorsports Industry News.

### WHO IS HYBR

**Hybrid Technologies, Inc** is the leader in the development and marketing of lithium-powered products worldwide.

### INVESTMENT HIGHLIGHTS

- **Hybrid Technologies, Inc (OTCBB:HYBR)** gets media coverage by **FOX**, **ABC** and **NBC** Affiliates during "Mean vs Green" competition at Lowe's Speedway.

- **The Company is the FIRST electric vehicle company to deliver a taxi**. Plus, it has recently delivered an all-electric PT-Cruiser to the New York Taxi and Limousine Commission.

- Already has lucrative contracts in place to supply its products to **NASA**, the **U.S. Environmental Protection Agency (EPA)** and the **U.S. Military**.

- **Hybrid Technologies, Inc. (OTCBB:HYBR)** unveiled its **LiV(TM)WISE** electric city car at the New York International Auto Show and received HUGE reviews from Experts – **Forbes Magazine**, **Yahoo! Finance** and **Jalopnik**

- **HYBR** was recently given a **"buy rating"** by a well-known and independent analyst firm, who raved about the Company's revenue growth over the past year and assigned it a **target price 270% higher then the current trading range**.

- **HYBR** has developed a successful Joint Venture with **Volkswagen.**

The Energy Bull is an independent marketing firm. This report contains forward-looking statements. Past performance does not guarantee future results. This report is based on The Energy Bulls independent analysis, and may, or may not be the opinion of The Energy Bull. This report is based on HYBR's web site, press releases and also relies on information supplied by sources believed to be reliable. The Energy Bull has been compensated twenty thousand dollars by a third party for the dissemination of this report. The information contained in this report is for informational purposes only, and should not be construed as an offer or solicitation to buy or sell securities. Investors should consult with an investment professional before investing any money.

# Exhibit 1