Peter Strojnik, 6464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE ENERGY BULL, a fictitiously named defendant whose true legal identity is not known by Plaintiff; HYBRID TECHNOLOGIES, INC., a Nevada Corporation; SUPERLATTICE POWER, INC. a Nevada Corporation; ABC DEFENDANTS 1-50<br><br>Defendants. | NO. 2:08-CV-1017 PHX ROS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**AND**<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>(Aiding and Abetting)<br><br>(Oral Argument Requested) |

**SUMMARY**

Hybrid Technologies, Inc. ("Hybrid") is in the business of retrofitting gas powered autos to battery powered autos. Superlattice Power, Inc. ("Superlattice") is Hybrid's former subsidiary, Zingo, Inc. (formerly Javakingcoffee, Inc. formerly Titan Web Solutions, Inc.). Both companies have consistently reported losses; in its latest 10Q, Hybrid – the stronger of the two – reported losses of $49,198,657 and $15,612 cash on hand. The two companies are tied through common employees, officers, directors, shareholders, and the place of business.

On its interactive website, Hybrid engages in direct sales of its electric autos to the Arizona Residents. Through its interactive website, Arizona residents can (1) Order a model; (2) select color and options; and (3) submit a financing application.

Both Hybrid and Superlattice trade on the OTCBB – Hybrid under ticker HYBR.OB, Superlattice under ticker SLAT.OB. The SEC filings for both indicate that their "auditors have expressed substantial doubt concerning [their] ability to continue as a going concern". Both admit that their operations depend on the sales of HYBR and SLAT securities to the shareholders.

In order to attract investors, both have engaged in securities manipulation through various stock promoters, notably a local Scottsdale company known by its website Quality$tocks.net. Neither has advised the securities market that the price of their securities is manipulated by these stock promoters. The unsolicited faxes in issue here were broadcast as part of the Defendants' securities manipulation scheme.

As more fully set forth below, Hybrid is subject to both general and specific jurisdiction: General jurisdiction by virtue of its interactive website; the offering for sale of its automobiles in the State of Arizona; providing financing to Arizona residents; the hiring of an Arizona securities manipulator Quality$Stocks.net; the sale of its securities to Arizona residents; and the broadcasting of the offensive junk faxes to the residents of the State of Arizona. Both defendants are subject to specific jurisdiction under the "effects" test of the 9[th] Circuit.

Although both Defendants deny any association with the faxes– a denial that is weak in light of Defendants' motive, opportunity, payments to known securities manipulators, and admitted dependence on stock sales for their continued survival - they do admit *knowing* about

the securities manipulation. Having such knowledge, Defendants owed a duty to disclose securities manipulation to the securities market. Neither Hybrid nor Superlattice discharged their affirmative duty of disclosure. Their failure to disclose securities manipulation through illegal faxes makes them liable as aiders and abettors. Hence, a motion for partial summary judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

1) **FACTS APPLICABLE TO MOTION FOR SUMMARY JUDGMENT AND TO OPPOSITION TO MOTION TO DISMISS**[1]

Hybrid and Superlattice trade their securities on the over-the-counter securities market. Their SEC filings indicate that they have and continue to incur substantial losses from operations – Hybrid as much as $50 million during the last 8 years; as of April 30, 2008, Hybrid had $15,612 in cash. (SOF 2) Superlattice reports losses of $589,323 during the last 9 months. (SOF 4) Both companies rely on infusion of money from investors for continued operations. (SOF 2, 4). Both companies report that their auditors have expressed "substantial doubt" concerning their ability to continue as a going concern. Id.

There is an entire industry designed to promote, pump and manipulate the OTC market. (See SOF 6 listing 205 security manipulators). Both Hybrid and Superlattice have employed these market manipulators. For example, Hybrid paid Stock Guru, Talking Stocks, HotOTC, Inside Move, Stock Hear, Stock Egg, Quality$tocks, Small Cap Voice, Willy Wizzard, OTC Bargains, Triple Crown Stock, Microcap Money, Wall street Grand, Ahead of the Bulls and

---

[1] A full Statement of Facts is appended hereto as Addendum A.

others to manipulate HYBR securities. (SOF 6) Superlattice engaged Quality$tocks for the same purpose. (SOF 6)

Stock manipulation faxes are a common method of pumping up OTC securities. (SOF 8) Stock manipulation faxes are designed to make it virtually impossible for a person or ordinary prudence to determine the identity of the broadcaster; however, there are two classes of persons and entities that benefit by securities manipulations: The company whose securities are manipulated and the individual shareholders, officer, directors and insiders of such companies. (SOF 8)

With respect to the securities manipulation faxes in issue here, both Hybrid and Superlattice were aware of their existence (SOF 15). Neither Hybrid nor Superlattice took any action to advise the securities market that (1) Hybrid and Superlattice pay third party manipulators to pump the stock, or (2) that the securities manipulation faxes contain false, incomplete and deceiving information. (SOF 16)

Hybrid maintains an interactive website "hybridtechnologies.com". Through its interactive website, Hybrid offers to the residents of the State of Arizona (1) electric cars for purchase; (2) a selection of colors and a list of options; and (3) financing (SOF 1). As publicly trade companies, both Hybrid and Superlattice offer their securities for purchase to Arizona residents. (SOF 5) In addition, Hybrid and Superlattice have engaged an Arizona securities manipulator, Quality$tocks, whose website indicates that it is located at 3370 N. Hayden Rd., Suite 123-591, Scottsdale, Arizona 85251 (SOF 7)

Lastly, Defendants 10Q's admit that both Defendants depend on the infusion of investor money to continue their operations. Both are highly motivated to engage in securities manipulation in order to attain sufficient income to continue operations. (SOF 6)

2) **RESPONSE TO MOTION TO DISMISS**

   a) **Burden and Quantum of Proof**

When "a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). If the court makes a jurisdictional decision based only on the pleadings and affidavits submitted by the parties and does not conduct an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. *Data Disc*, 557 F.2d at 1285. In resolving Defendants' Motion to Dismiss, the Court takes undisputed allegations in Plaintiffs' Complaint as true and resolves conflicting factual allegations in the parties' Affidavits in favor of Plaintiffs. *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002); *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements LTD*, 328 F.3d 1122, 1129 (9th Cir. 2003).

**b) General Jurisdiction**

General jurisdiction exists where a defendant's activities in Arizona are continuous or systematic, even if the plaintiff's action has nothing to do with these activities. See *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). In applying the "substantial" or "continuous and systematic" contacts test, courts have focused primarily on two areas. First, they look for some kind of deliberate "presence" in the forum state, including physical facilities, bank accounts, agents, registration, or incorporation. See *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952) (finding general jurisdiction when president of Phillipines-based corporation maintained office, kept company files, held director meetings, distributed salaries, and conducted other company business in the forum state). In addition, courts have looked at whether the company has engaged in active solicitation toward and participation in the state's markets, i.e., the economic reality of the defendant's activities in the state. *Gator.com Corp. v. L.L. Bean, Inc*., 341 F.3d 1072 (9th Cir. 2003)

**c) Interactive Internet Marketing – The *Zippo* Sliding Scale Test**

Whether personal jurisdiction can be constitutionally exercised on the basis of a Web site is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))[2].

---

[2] The *Zippo* court reasoned that "the likelihood that personal jurisdiction can be exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997) At one end of the scale are "passive websites," in which defendants merely "make information available to those who are interested" and thus should not be subject to personal jurisdiction. Id.

Courts look to the level of interactivity and commercial nature of the exchange that occurs on a website to determine if sufficient contacts exist to warrant the exercise of jurisdiction. Id. at 418. An internet advertisement alone is insufficient to subject a party to jurisdiction in another state; there must be "something more" to demonstrate that the defendant directed activity toward the forum state. Id.

In *Gator.com Corp. v. L.L. Bean, Inc.,* 341 F.3d 1072 (9th Cir. 2003), the 9th Circuit court of appeals found the existence of a "virtual store" was sufficient for finding general jurisdiction over the defendant:

> "… even if the only contacts [defendant] had with California were through its virtual store, a finding of general jurisdiction in the instant case would be consistent with the "sliding scale" test that both our own and other circuits have applied to internet-based companies. See, e.g., *Cybersell*, 130 F.3d at 417-19. This test requires both that the party in question "clearly [do] business over the Internet," *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), and that the internet business contacts with the forum state be substantial or continuous and systematic. [citations] Recognizing that an online store can operate as the functional equivalent of a physical store, the test does not require an actual presence in the state. Rather, the nature of the commercial activity must be of a substantial enough nature that it "approximate[s] physical presence." [citations] (footnotes omitted)

In the case under consideration, Hybrid maintains an interactive website offering its electric conversions for sale to the Arizona residents. Hybrid offers a selection of colors and a list of options. Hybrid offers financing. As publicly trade companies, Hybrid offers its securities to Arizona residents through securities brokers. In addition, Hybrid engaged an Arizona securities manipulator, Quality$tocks whose website indicates that it is located at 3370 N. Hayden Rd., Suite 123-591, Scottsdale, Arizona 85251. This Court has general jurisdiction over Hybrid.

### d) Specific Jurisdiction – The "But For" Effects Test

"To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Bancroft & Masters*, 223 F.3d at 1087; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9 Cir. 1998); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9 Cir. 1993); ("Calder thus established that personal jurisdiction can be predicated on (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered--and which the defendant knows is likely to be suffered--in the forum state."). The "express aiming" factor is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Id.

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's claim arises out of a defendant's forum related activities. *Brink v. First Credit Res.*, 57 F. Supp.2d 848, 861 (D. Ariz. 1999) (citing *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9 Cir. 1997); Doe, 112 F.3d at 1051; *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 271 (9 Cir. 1995). The "arising out of" requirement of the specific jurisdiction test is met if, "but for" the contacts between the defendant and the forum state, Plaintiff's cause of action would not have arisen. Id. (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

Here, Plaintiff has shown the motive, the opportunity, and the hiring of securities manipulators to manipulate HYBR and SLAT securities. In addition, Defendants' proffered Affidavit indicating that "Hybrid does not and has not employed any person or agent in the State of Arizona" appears to be patently false. As Plaintiff's Declaration points out, Hybrid in fact

-8-

hired Quality$tocks – a Scottsdale company – to manipulate HYBR securities. Plaintiff has shown that Defendants entire *modus operandi* is to manipulate the securities market in order to assure their continued existence.  Here, Defendants claim that they have not published or authorized the publication of the faxes. See doc 15-2, ¶¶3, 5. Whether they did or did not is a matter in dispute.  However, on a motion to dismiss for lack of personal jurisdiction, Plaintiff must show only "prima facie" proof.  As Judge Silver noted at footnote 3 in *Chandler v. Roy*, 985 F. Supp. 1205 (D.Ariz. 1997):

> Any higher burden, such as proof by a preponderance of the evidence, would allow a defendant to obtain a dismissal simply by challenging the facts set forth by a plaintiff through his own written materials. See Data Disc, 557 F.2d at 1285. However, if the plaintiff survives the motion to dismiss under a prima facie burden of proof, he still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. Id. at 1285 n.2 (citing Wells Fargo, 556 F.2d at 430 n.24).

Plaintiff has successfully overcome Defendants' naked denial.

### e) <u>Alternatively, Request for Additional Discovery</u>

In the event that this Court adopts the view contrary to Plaintiff's, Plaintiff respectfully requests that it be granted the right to discovery. Although some courts require that a plaintiff make a prima facie showing of jurisdiction prior to a court allowing a party to conduct discovery, the Ninth Circuit does not. See *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) (finding no authority from the Ninth Circuit to support the proposition that plaintiff must establish a prima facie case of personal jurisdiction before obtaining jurisdictional discovery); *Marshall v. McCown Deleeuw & Co.*, 391 F.Supp.2d 880, 882-83 (D. Idaho 2005) (same); *National Union Fire Insurance Co. of Pittsburgh, Pa, v.*

*Aerohawk Aviation, Inc.*, 259 F.Supp.2d 1096, 1106 (D.Idaho 2003) (same). *Seaboard Surety Co. v. Grupo Mexico, S.A. de C.V.*, No. CIV-06-0134-PHX-SMM (D.Ariz. 2006) "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dept. of Interior*, 342 F.2d 1080, 1093 (9th Cir. 2003).

3) **MOTION FOR PARTIAL SUMMARY JUDGMENT – AIDING AND ABETTING**

Defendants' failure to disclose the securities manipulation through illegal faxes is, without more, sufficient for a finding of secondary liability. Whether we know who actually broadcast the faxes is entirely irrelevant.

An example from criminal law is appropriate: A parent stands by while a masked man assaults his child. Is the father liable for aiding and abetting? The Court have uniformly held that because the parent has a common law duty to protect his children, his inactivity (failure to protect the child) renders him liable as an aider and abettor[3].

---

[3] In *State v. Walden,* 293 S.E.2d 780 (N.C. 1982) the Supreme Court of North Carolina held that a parent who is present while his or her child is being attacked, and who fails to take all steps reasonably possible to protect the child, commits an "'act of omission . . . showing the parent's consent and contribution to the crime being committed.'" In Walden, the defendant watched silently while a man beat her son with a belt over an extended period of time. The trial court instructed the jury that the defendant could be found guilty of aiding and abetting the assault on her son if she was present with the duty and reasonable opportunity to prevent it and failed to take reasonable steps to do so. The court approved these instructions, stating that although the general rule in North Carolina is that a person cannot aid and abet a crime by inaction, there is an exception where the common law imposes an affirmative duty to act. (Id. at pp. 784-785.)

In *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733 (Swanson), the defendant was charged with committing a lewd or lascivious act on a child under 14. On two occasions, she stood by and said nothing while her boyfriend sexually fondled her daughter. The court extensively quoted from *Walden*, ultimately holding that "[i]n California, parents have a duty 'to exercise reasonable care, supervision, protection, and control over their minor child[ren].'" (Swanson, at p. 746.) The court concluded that there was probable cause for the charges against the defendant because her failure to perform that duty aided the crime by encouraging its commission. (Ibid.)

So, too, in the context of securities manipulation, there is an independent duty to disclose securities manipulation. In *In Re Initial Public Offering Securities*, 241 F.Supp.2d 281 (S.D.N.Y. 2003), the Court noted that "Failure to disclose that market prices are being artificially depressed operates as a deceit on the market place and is an omission of a material fact", citing to United *States v. Charnay*, 537 F.2d 341, 351 (9th Cir.), cert. denied, 429 U.S. 1000, 97 S. Ct. 527, 50 L. Ed. 2d 610 (1976)[4].

Defendants were aware of the securities manipulations through the illegal faxes. They did not disclose the securities manipulations. They are secondarily liable to Plaintiff and the proposed Class under the TCPA.

RESPECTFULLY SUBMITTED this 23rd day of July, 2008.

PETER STROJNIK

_____
Peter Strojnik
Attorney for the Plaintiff

---

Likewise *People v. Rolon*, 160 Cal.App.4th 1206, 73 Cal.Rptr.3d 358 (Cal.App. Dist.2 03/11/2008) the Court held that a parent has a duty to protect his or her young child and may be criminally culpable on an aider and abettor theory for an assault causing death and on an implied malice theory for murder where the parent fails to take reasonably necessary steps for the child's protection, so long as the parent, with ability to do so, fails to take those steps with the intent of facilitating the perpetrator's assaultive offense.

[4] Civil cases require the existence of an independent duty to render an inactive aider and abettor liable. For example, remained silent regarding a purported misrepresentation in a loan agreement between plaintiffs and defendant's borrower is insufficient to sustain a claim for aiding and abetting unless the defendant owes an independent duty to the plaintiff. *Albion Alliance Mezzanine Fund, L.P. v State St. Bank & Trust Co*., 8 Misc 3d 264, 271 [2003], affd 2 AD3d 162 [2003]). Therefore, allegations of mere inaction or silence are insufficient to sustain a claim for aiding and abetting unless the defendant has an independent duty to the plaintiff (*King v George Schonberg & Co.,* 233 AD2d 242 [1st Dept 1996]; *DePinto v Ashley Scott, Inc.,* 222 AD2d 228 [[1st Dept 1995]).; *Superintendent of Ins. v Spira*, 289 AD2d 173 [1st Dept 2001]; *Westminster Bank, USA v Weskel*, 124 AD2d 144 [1st Dept 1987]