1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9    Peter Strojnik, P.C.,                    )    No. CV-08-1017-PHX-ROS
                                              )
10              Plaintiff,                     )    **ORDER**
                                              )
11   vs.                                       )
                                              )
12                                            )
     Energy Bull et al.,                      )
13                                            )
                Defendants.                   )
14                                            )
                                              )
15   _____)

16                                **BACKGROUND**

17          According to Plaintiff's first amended complaint, on May 20, 2008 Defendant Hybrid

18   Technologies, Inc. (a Nevada Corporation) transmitted an unsolicited fax to Plaintiff and

19   members of an  undefined class (Doc. 10 at 2, 4).  On June 4, 2008, Defendant Superlattice

20   Power, Inc. (a Nevada Corporation) transmitted a similar unsolicited fax to Plaintiff and the

21   putative class members (Doc. 10 at 2, 4).  Plaintiff filed its first complaint on June 2, 2008

22   and amended the complaint on June 24, 2008 to name Defendants Hybrid Technologies and

23   Superlattice Power ("Defendants") (Docs. 1, 10).[1]  In its first amended complaint, Plaintiff

24   alleges Defendants injured Plaintiff and putative class members by violating the federal

25   Telephone Consumer Protection Act of 1991 and Junk Fax Prevention Act of 2005 (TCPA),

26   _____

27          [1]Plaintiff attempted to file a second amended complaint on September 3, 2008 (Doc. 28).
     However, the Court struck this complaint for failing to comply with Federal Rule of Civil Procedure
28   15 and Local Rule of Civil Procedure 15.1 (Doc. 33).

1  aiding and abetting a violation of the TCPA, and unlawfully conspiring to manipulate

2  Defendants' stock prices (Doc. 10 at 11-18).

3      On July 18, 2008, Defendants filed a joint Motion to Dismiss for lack of personal

4  jurisdiction, which included affidavit evidence (Doc. 15).   Plaintiff filed a response,

5  including affidavit evidence, and a concurrent Motion For Partial Summary Judgment on the

6  aiding and abetting counts (Doc. 16).  Defendants replied and objected to Plaintiff's evidence

7  (Docs. 19-20).  Plaintiff then responded to Defendants' evidentiary objections and filed a

8  Motion For Sanctions (Docs. 22-25).  For the following reasons, the Court will dismiss

9  Plaintiff's complaint against Defendants for lack of personal jurisdiction.

10

## DISCUSSION

11

**1. Standard**

12

13      Once a defendant has moved to dismiss for lack of personal jurisdiction, the burden

14  of proving jurisdiction falls on the plaintiff.  See Butcher's Union Local No. 498, United

15  Food and Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 538 (9th Cir. 1986).  If the

16  court adjudicates the motion without a hearing, plaintiff need only make a *prima facie*

17  showing of adequate personal jurisdiction to survive the challenge.  See Schwarzenegger v.

18  Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); Rio Prop.'s, Inc. v. Rio Int'l

19  Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

20      When determining the sufficiency of a *prima facie* showing, "[t]he court may consider

21  evidence presented in affidavits" Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

22  The court must assume as true all uncontroverted facts in the plaintiff's complaint and must

23  interpret all evidentiary disputes in plaintiff's favor.  See Schwarzenegger, 374 F.3d at 800

24  ("[U]ncontroverted allegations in the complaint must be taken as true . . . Conflicts between

25  parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

26  However, "the plaintiff cannot simply rest on the bare allegations of its complaint" if

27  controverted by evidence incorporated into defendant's motion.  Id. (internal citation

28  omitted).  See also Data Disc, Inc. v. Sys. Technology Assoc.'s, Inc., 557 F.2d 1280, 1284

(9th Cir. 1977) (A court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."). All evidence must be admissible to be considered. <u>See</u> <u>Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.</u>, 252 F. Supp.2d 917, 923 (D.Ariz. 2003); <u>see also</u> <u>Bach v. McDonnell Douglas, Inc.</u>, 468 F. Supp. 521, 525-26 & n.7 (D. Ariz. 1979).

**2. Personal Jurisdiction**

For *in personam* actions against a nonresident defendant, the plaintiff must demonstrate his complaint constitutionally subjects the defendant to the jurisdiction of the courts of the state in which the plaintiff has brought suit and does not violate the nonresident defendant's right to constitutional due process. <u>See</u> <u>Data Disc</u>, 557 F.2d at 1286-87. A plaintiff may make this demonstration by establishing the court's specific or general jurisdiction over the defendant. <u>See</u> <u>Id.</u> The Plaintiff here alleges four different theories through which the Court may constitutionally subject the nonresident Defendants to the jurisdiction of the Courts of Arizona. One implicates specific jurisdiction: Defendants participated in a scheme to transmit illegal faxes to Arizona residents. The other three implicate general jurisdiction: (1) Defendants have employed a consulting firm headquartered in Arizona; (2) Defendants offer their publicly traded stocks for sale to Arizona residents; and (3) Defendant Hybrid Technologies operates a website offering products for sale (including financing) to Arizona residents (Doc. 16 at 2-9).

**A. Specific Jurisdiction**

The Ninth Circuit has developed a three-part test for determining the sufficiency of specific personal jurisdiction, according to which a plaintiff must show:

> A. The non-resident defendant "purposefully direct[ed] his activities or
> consummate[d] some transaction with the forum or resident thereof; or
> perform[ed] some act by which he purposefully avail[ed] himself of the

privilege of conducting activities in the forum, thereby invoking the benefits
and protections of its laws;"

B. The claim "arises out of or relates to the defendant's forum-related
activities;" *and*

C. "[T]he exercise of jurisdiction must comport with fair play and substantial
justice, i.e. it must be reasonable."

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d
1199, 1205-06 (9th Cir. 2006)

This analysis is not rigid and a plaintiff may satisfy the test with a lesser showing of
minimum contacts – prongs (A) and (B) – with a greater showing of reasonableness – prong
(C).  See Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1188-89 (9th Cir. 2002).

In this case, Plaintiff's amended complaint asserts that Defendants purposefully
transmitted (or aided and abetted the transmission of) illegal faxes to Arizona residents and
that this act gives Arizona courts personal jurisdiction over defendants (Doc. 10 at 3-7, 15-
17).  See 47 U.S.C. §§ 227(b)(1)(C), (b)(3) (creating a private right of action to enforce
statutory ban on sending unauthorized fax transmissions).  If Plaintiff's factual allegations
were uncontroverted, the complaint without more would suffice to establish a *prima facie*
showing of personal jurisdiction over Defendants, as all three prongs of the Ninth Circuit
specific jurisdiction test would be satisfied.  See Schwarzenegger, 374 F.3d at 800
("[U]ncontroverted allegations in the complaint must be taken as true").  However,
Defendants' Motion to Dismiss includes an affidavit from Holly Roseberry, President of
Defendant Hybrid Technologies and Director of Defendant Superlattice Power, in which
Roseberry categorically denies that either Defendant published or authorized publication of
the unsolicited faxes attached to Plaintiff's first amended complaint (Doc. 15 Ex. 1).

Plaintiff responds with its own affidavit in which the President of Plaintiff Peter
Strojnik, P.C. (Peter Strojnik) laid out the following assertions to rebut Ms. Roseberry's
denial:

I.    Both Defendants were in poor financial condition during the period preceding the transmission of the allegedly illegal faxes and needed to generate revenue (Doc. 17 at 2-6);

II.    Many companies that trade stocks through the OTCBB[2] system (like Defendants) rely on stock promoters to manipulate the value of their stocks and generate revenue, commonly using methods such as transmission of unsolicited faxes (Doc. 17 at 6, 9-10);

III.    Defendants employ or have employed many such stock promoters to manipulate the value of their stocks (Doc. 17 at 7-9); and

IV.    Defendants were aware of the fax transmissions (Doc. 17 at 11).

These assertions, supported by affidavit statements, are sufficient to create a *prima facie* showing of Arizona courts' personal jurisdiction over Defendants, demonstrating Defendants' motive, means, and knowledge of the offending faxes and suggesting that Defendants were in some way responsible for the transmission of these faxes to Arizona residents.  Without further analysis, the Court would accept the assertions (and underlying statements) contained in Plaintiff's affidavit as true and uphold personal jurisdiction.  See Schwarzenegger, 374 F.3d at 800 ("Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.").  However, Defendants successfully challenge the admissibility of many of the statements contained in Plaintiff's affidavit, which are necessary to substantiate the above assertions and without which Plaintiff's *prima facie* showing of personal jurisdiction fails.

---

[2]OTC (or "Over the Counter") stocks are securities that are not traded on any major stock exchange but are reported on the OTC Bulletin Board (or "OTCBB").

**I. Assertion Concerning Defendants' Financial Health**

Plaintiff's affidavit supports its assertion concerning Defendants' financial health with statements referencing Defendants' corporate financial data and analysis from Defendants' auditors (Doc. 17 at 2-4). Much of the financial data appears to originate from the public record, Security and Exchange Commission filings (Doc. 18 at 3-6). Because the financial data underlying Plaintiff's statements are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," the Court will heed Plaintiff's request and judicially notice the SEC documents underlying the statements (Doc. 22 at 3). Fed. R. Evid. 201(b), (d).[3] Defendants do not challenge the affidavit statements founded on objective financial data but rather claim the affidavit's more subjective statements, those founded on the auditors' analysis, lack proper foundation; for example: "The continuation of [Defendants] as a going concern is dependent upon the continued financial support from its shareholders, its ability to obtain necessary debt and equity financing to continue operations, and the attainment of profitable operations" (Doc. 20 at 2). Even if the Court were to strike the challenged statements from Plaintiff's affidavit, Plaintiff would still have presented sufficient evidence to support a *prima facie* showing that Defendants were in poor financial condition during the period preceding the transmission of the offending faxes.

**II. Assertion Concerning OTC Stocks, the OTCBB and Stock Promoters**

Defendants also claim that the assertion in Plaintiff's affidavit concerning OTC stocks, the OTCBB and stock promoters lacks proper foundation (Doc. 20 at 2-3). Plaintiff's affidavit contains many statements supporting this assertion, such as: "There is a whole industry designed to promote, pump, and manipulate OTC BB stocks;" "Stock promotion

---

[3]Usually, the Court requires parties to submit copies of foundational documents underlying affidavit statements (i.e. the SEC filings). However, because the Court will ultimately dismiss Plaintiff's complaint, this issue is moot.

junk faxes are a common method of pumping stock prices;" and "All stock promotion junk faxes are designed to manipulate the price of securities." (Doc. 18 at 6, 10). The declarant of these statements is Peter Strojnik, a licensed attorney in the State of Arizona and sole shareholder and president of Plaintiff Peter Strojnik, P.C. (Doc. 18 at 1-2). Mr. Strojnik claims to be an expert who is qualified to speak on matters concerning OTC stocks, the OTCBB, and stock promoters (Doc. 22 at 3-4). Mr. Strojnik further claims to have based his affidavit statements "on [his] professional skill and experience" as well as "specialized knowledge relating to the matters . . . all of which derive from facts that are rationally based on [his] perceptions" (Doc. 18 at 1-2). Mr. Strojnik is very adept at reciting the legal standard necessary to admit his affidavit statements into evidence, as a layperson or as an expert; yet he does not support his recitation of the law with sufficient facts. Nowhere, either in Mr. Strojnik's affidavit or in Plaintiff's response to Defendants' evidentiary objection, are listed any experiences of Mr. Strojnik's concerning OTC stocks, the OTCBB, or stock promoters. Plaintiff has provided no factual statement reliably suggesting either Mr. Strojnik is an expert on these matters or has sufficient experience to comment on them as a layperson, pursuant to Federal Rules of Evidence 701, 702, and 703. These statements are thus inadmissible and Plaintiff's assertion concerning OTC stocks, the OTCBB, and stock promoters is left without supporting evidence. See Fed. R. Evid. 602, 701-03.

**III. Assertion Concerning Defendants' Employment of Stock Promoters**

Defendants further object to the assertion in Plaintiff's affidavit concerning Defendants' employment of stock promoters and claim the statements underlying this assertion lack proper foundation and are hearsay (Doc. 20 at 2-3). In his affidavit, Mr. Strojnik states that Defendants "[s]hare []quality$stocks.com as their primary stock promotion entity" and "[s]hare the method of pumping their respective stock through the use of similar unsolicited faxes" (Doc. 18 at 5). Mr. Strojnik offers no foundation of how he possesses personal knowledge on these topics and these statements are thus inadmissible.

See Fed. R. Evid. 602.  Although Mr. Strojnik correctly points out that Defendants, through submissions to the Court, have admitted hiring Quality Stocks, LLC, Defendants have not admitted employing this company as a promoter to manipulate their stock prices or to transmit unsolicited faxes (Docs. 21 Ex. 1; 22 at 4).  Mr. Strojnik's affidavit also contains a statement listing various stock promoters allegedly hired by Defendants (Doc. 18 at 7-9).  Mr. Strojnik admits having no personal knowledge of these business relations and basing his affidavit statement on a compilation of data from an unnamed "membership based organization" to which Mr. Strojnik belongs (Doc. 18 at 7).  This information is inadmissible hearsay.  See Fed. R. Evid. 801(c), 802.  While Mr. Strojnik again claims to be an expert on these matters – and further claims the hearsay list of stock promoters is his data source – he provides no factual basis to support this claim of expertise (Doc. 22 at 4).  In this way, all of Plaintiff's evidence supporting its assertion that Defendants employed stock promoters to manipulate their stock value is inadmissible for lack of foundation and hearsay.

**IV. Assertion Concerning Defendants' Knowledge of the Offending Faxes**

Lastly, Defendants object to affidavit statements supporting Plaintiff's assertion that Defendants knew of the offending faxes.  Defendants specifically object to statements in Mr. Strojnik's affidavit referring to "Unauthorized Fax Disclaimers" which Defendants posted on their websites in response to the offending faxes (Doc. 20 at 3-4).  Mr. Strojnik's affidavit suggests that the existence of these disclaimers on Defendants' websites demonstrates Defendants' knowledge of the offending faxes (Doc. 18 at 11-12).  Mr. Strojnik appears to have cut and pasted these disclaimers directly from Defendants' respective websites into his affidavit (Doc. 18 at 12).  Defendants claim these affidavit statements are misleading and lack foundation (Doc. 20 at 3-4).  They are not misleading, as the website disclaimers prove exactly what Mr. Strojnik suggests: Defendants were aware of the offending fax transmissions.  Nor do they lack foundation, since the foundation for Mr. Strojnik's

statements is clearly based on Defendants' websites. Plaintiff thus makes a *prima facie* showing that Defendants were aware of the offending faxes.

After Defendants' evidentiary objections, Plaintiff, through evidence contained in Mr. Strojnik's affidavit, is able to establish two elements of its *prima facie* showing of specific jurisdiction: (I) Defendants were in poor financial condition during the period preceding the transmission of the offending faxes and (IV) Defendants were aware of the fax transmissions. Factual assertions (II) and (III) fail because all evidence submitted by Plaintiff to substantiate these assertions is inadmissible. Ultimately, Defendants' financial condition and knowledge of the offending faxes are together insufficient to create a *prima facie* showing that Defendants were in some way responsible for the transmission of these faxes to Arizona residents. This is Plaintiff's only argument for asserting specific jurisdiction and it fails (Doc. 16 at 8).

**B. General Jurisdiction**

Even without proving specific jurisdiction, a plaintiff may constitutionally subject a nonresident defendant to the jurisdiction of a foreign court if the defendant has "substantial and continuous" contacts with that state. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1173 (9th Cir. 2006). The substantial and continuous contacts analysis is not "a precise checklist . . . or definitive litany of factors," but rather requires a totality of the circumstances inquiry. Id. at 1172. Such an inquiry examines "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there" as well as the defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." Id. In the Ninth Circuit, general jurisdiction is disfavored. See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851 n.2 (9th Cir. 1993) (The Ninth Circuit "regularly [has] declined to find general jurisdiction even where the contacts were quite extensive.").

1    Plaintiff's strongest argument for finding general jurisdiction is that Defendant Hybrid

2    Technology's online store, to which Arizona residents have access via the internet, generates

3    sufficient commercial activity in Arizona to justify subjecting Defendant Hybrid

4    Technologies to the general jurisdiction of Arizona courts (Doc. 16 at 6-7).  As a matter of

5    law, an online store may create general jurisdiction if the website does significant business

6    in the state asserting jurisdiction.  See  Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072,

7    1078 (9th Cir. 2003), vacated on other grounds ("Given the high standard the Ninth Circuit

8    has set, the presence of general jurisdiction in the instant case is a close question . . . we find

9    that there is general jurisdiction in light of L.L. Bean's extensive marketing and sales in

10   California, its extensive contacts with California vendors, and the fact that, as alleged by

11   Gator, its website is clearly and deliberately structured to operate as a sophisticated virtual

12   store in California.").  In this case, however, Plaintiff provides no evidence that Defendant

13   Hybrid Technologies has made a single sale in Arizona and, to the contrary, affirms that

14   Defendant is not even properly licensed to sell its products in Arizona (Doc. 18 at 2).

15   Defendant's Roseberry affidavit further supports the proposition that Hybrid Technologies

16   has not made a single sale in Arizona and, in this way, finding general jurisdiction based on

17   Defendant's online store is inappropriate (Doc. 15 Ex. 1).

18   Similar logic applies to Plaintiff's second general jurisdiction argument, that the

19   alleged availability of both Defendants' stocks for sale in Arizona generates sufficient ties

20   between Defendants and Arizona to establish general jurisdiction.  Although the Strojnik

21   affidavit claims, with questionable foundation, that both Defendants offer their stock for sale

22   in Arizona through various brokerage firms, Plaintiff provides no proof that such sales occur

23   or occur in any significant numbers (Doc. 18 at 6).  Even if some Arizona consumers have

24   logged onto the internet or called a stock broker to purchase some of Defendants' stocks, this

25   alone would not create a substantial and continuous presence as contemplated by Ninth

26   Circuit case law.  See Tuazon, 433 F.3d at 1172.

27

28

Lastly, Plaintiff claims Defendants have subjected themselves to the general jurisdiction of Arizona courts by contracting with an Arizona company to perform unspecified services (Doc. 16 at 8-9). The parties dispute whether this company (Quality Stocks, LLC) is actually an Arizona company and whether Defendants contracted with this company in Arizona or in another state (Docs. 19, 21, 23-25). However, even if the Court assumes Quality Stocks, LLC is an Arizona corporation and Defendants employed this corporation for work to be performed in Arizona, such an agreement, without more, would not support a finding of general jurisdiction. The Court cannot find that such a remote and attenuated contact with Arizona manifests the "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets" required for a finding of general jurisdiction over Defendants. Id. In this way, all of Plaintiff's arguments for general jurisdiction fail.

**C. Plaintiff's Request For Additional Discovery On Jurisdictional Issues**

Failing to establish Arizona courts' personal jurisdiction over Defendants, Plaintiff, in the alternative, requests that the Court grant it the right to conduct additional jurisdictional discovery (Doc. 16 at 9-10). Federal trial courts are "vested with broad discretion" in allowing discovery, which "may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Data Disc, 557 F.2d at 1285 n.1. While Plaintiff controverts pertinent facts pertaining to the Court's personal jurisdiction over Defendants, the Court agrees with Defendants that this controversy is based primarily on "Plaintiff's self-serving speculation" and not on any potential evidence which Plaintiff reasonably believes, and has reasonably established, it could discover (Doc. 19 at 6). Given its weak factual showing and generally insufficient legal argument in these proceedings, Plaintiff's request for additional discovery will not be granted and the Court will dismiss Plaintiff's complaint for lack of personal jurisdiction.

**3. Plaintiff's Motion For Sanctions**

The Court will also deny Plaintiff's Motion For Sanctions Against Defendants for filing a false affidavit (Doc. 23). Defendants submitted an affidavit from Michael McCarthy, the Managing Director of Quality Stocks, LLC, to rebut Plaintiff's claim that Defendants have engaged in a business relationship with an Arizona-based stock promoter (Quality Stocks) (Doc. 21 Ex. 1). Plaintiff challenges the veracity of various statements made by Mr. McCarthy, claims McCarthy perjured himself, and further claims Defendants willfully participated in this perjury (Doc. 23). Even if Plaintiff is correct and Mr. McCarthy perjured himself through his affidavit, it provides no evidence that Defendants suborned this perjury or submitted this document in bad faith to the Court. Furthermore, the allegedly perjured statements concern facts peripheral to the case, and as described in section 2.B, have little bearing on the jurisdictional issues in Defendants' Motion To Dismiss. The Court will not, nor is there a legal basis to, entertain a mini-trial on the truth or falsity of these statements.

Accordingly,

**IT IS ORDERED** Defendants' Motion To Dismiss for lack of personal jurisdiction (Doc. 15) **IS GRANTED**. The Clerk of Court shall terminate proceedings against Defendants Hybrid Technologies, Inc. and Superlattice Power, Inc.

**FURTHER ORDERED** Plaintiff's Motion For Sanctions (Doc. 23) **IS DENIED**.

**FURTHER ORDERED** Plaintiff's Motion For Partial Summary Judgment (Doc. 16) **IS DENIED AS MOOT**.

**FURTHER ORDERED** a Show Cause Hearing is set for **December 17, 2008 at 2:00 P.M.**

1

2

3
DATED this 10th day of December, 2008.

4

5

6
Roslyn O. Silver
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28