Peter Strojnik, Esq. – Arizona. State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

PETER STROJNIK, P.C., an Arizona
Corporation,

                                        Plaintiff,

        vs.

THE ENERGY BULL, et al.

                                        Defendants.

)  NO.  2:08-cv-1017 PHX -ROS
)
)  **RULE 15 MOTION FOR LEAVE TO AMEND**
)  **FIRST AMENDED COMPLAINT**
)
)
)
)
)
)
)
)

## I. INTRODUCTION

Plaintiff seeks leave to amend the First Amended Complaint in the above-entitled action pursuant to Federal Rules of Civil Procedure § 15(a)(2).  Justice requires adding Adam Harris Pasternack and his wife, Alla Pasternack, as well as Digitalspeed Communications, Inc. because it was discovered on or about August 26, 2008 that they were the parties responsible for the sending of facsimile at issue.

The supporting documents will demonstrate that Digitalspeed was the sender of the Fax.  The supporting documents will demonstrate and corroborate Plaintiff's evidence that Mr. Pasternack, the sole owner and President of Digitalspeed, has in the past acted under Digitalspeed's corporate shield to broadcast facsimiles.  Mrs. Pasternack will be added as Mr. Pasternack's spouse pursuant to A.R.S. § 25-215(d).

## II.  STATEMENT OF FACTS

On June 2, 2008, Peter Strojnik, P.C. filed a complaint against The Energy Bull, a fictitious entity, for its violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA), aiding and abetting, and conspiring to violate the TCPA (Doc. 1).  On June 24, 2008, Plaintiff filed a First Amended Complaint as of Right alleging the same causes of action against Hybrid Technologies and Superlattice Power (Doc. 10).

Prior to and between the date of filing Doc 10 and August 26, 2008, Plaintiff was unaware of the identity of the actual sender of the subject facsimile giving rise to the TCPA violation (the "Fax"), but was aware that Hybrid, Superlattice and "The Energy Bull" were involved in the violation (Strojnik Declaration, Exhibit 1).  It was not until on or about August 26, 2008 that Plaintiff discovered the Fax sender's identity.  Plaintiff discovered that Digitalspeed and Adam Pasternack were the principal violators of the TCPA for their acts of sending the Fax (Strojnik Dec., ¶8) (Collins Declaration, ¶4, Exhibit 2).

Digitalspeed Communications, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania (Pennsylvania Secretary of State, Exhibit 3).  Mr. Pasternack represents that he is the President of Digitalspeed (See Doc 9-2, No. 2:08-cv-02205-PHX-NVW).

The TCPA and its accompanying regulations has produced stealthy and crafty violators of the federal fax transmission rules.  Most often, the fax blasters hide their identity by omitting the caller identification on the top of the particular fax and/or not providing any information on the fax that can lead to the identification of the fax blaster.  Sometimes, however, the fax blaster identifies itself by placing its telephone number on the bottom of the fax in a meager attempt to comply with TCPA rules and regulations.  This number is the removal number, and it purports to allow the caller of said number to remove himself/herself from the fax blaster's "fax list."  Invariably, the fax blaster's identity can be

targeted by identifying the issuee of the removal number (Strojnik Dec., ¶5).  In this case, it was not until on or about August 26, 2008 that Plaintiff identified Digitalspeed as the issuee of the removal number (Strojnik Dec., ¶7).

In prior and contemporaneous cases[1], Plaintiff's counsel has conducted extensive research on Mr. Pasternack and Digitalspeed and their involvement in the violation of the TCPA.  For example, the research revealed that Digitalspeed was the sender of at least 10 other unsolicited faxes not at issue in this case (Strojnik Dec., ¶8) (Collins Dec., ¶4).  Mr. Pasternack was the CEO of Faxquest International, Ltd., which is a fax transmission service in Philadelphia that had the same exact office as Digitalspeed (Lexis SmartLinx Doc., Exhibit 4) (YellowPages.com, Exhibit 5)[2].  In 2005, the FCC cited Mr. Pasternack, *not Digitalspeed*, for a violation of the TCPA for his broadcasting of unsolicited facsimiles (Exhibit 6).[3]

In light of Plaintiff's counsel's already-complete research on Digitalspeed and Mr. Pasternack coupled with the identification of Digitalspeed as the sender of the Fax, Plaintiff filed its Second Amended Complaint naming Digitalspeed and Mr. Pasternack as Defendants one week after identifying them.  On November 25, 2008, the Court in this matter struck the Second Amended Complaint pursuant to FRCP 15(a)(2) although there was no opposition by Defendants Hybrid and Superlattice (Doc. 28).    Plaintiff now proposes to add Digitalspeed and the Pasternacks to the proposed Second Amended Complaint (Exhibit 7).

---

[1] Plaintiff's counsel currently represents Consumer Protection Corporation and Peter Strojnik, P.C. in several other TCPA cases in which Digitalspeed and Mr. Pasternack are named defendants.  These cases are as follows: *Consumer Protection Corporation v. Medefile International, Inc. et al.*, No. cv-08-1853-PHX-ROS; *Consumer Protection Corporation v. Playbox (US), Inc. et al.*, No. cv-08-2211-PHX-MHM; *Consumer Protection Corporation v. Radisson Hotels Int'l, Inc. et al.*, No. cv-08-2205-PHX-NVW; *Peter Strojnik, P.C. v. Signalife, Inc. et al.*, No. cv-08-1116-PHX-FJM.
[2] If the Court reviews Exhibits 4 and 5 together, they will demonstrate that Faxquest International and Digitalspeed both did/do reside at 1811 Chestnut Street, Suite 304, Philadelphia, Pennsylvania 19103.
[3] The FCC Citation is addressed to "Adam Harris", which is an a/k/a for Adam Harris Pasternack.

# III. SUPPORTING LAW

## A. The Rule 15(a) Standard

FRCP § 15(a)(2) states in relevant part: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." In deciding a Motion to Amend, the Court is guided by the principle that matters be decided on the merits rather than on technicalities. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded" (quoting FRCP 15(a))). "[A] court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits, rather than on pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The liberal policy of granting leave to amend is "not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "Thus, a motion to make an '[a]mendment is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim." *Id.* (citing *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir. 1982).

### 1. Justice Requires Adding Digitalspeed Because Of Its Identity As The Sender Of The Fax.

Plaintiff proposes to add the following allegations to the Second Amended Complaint relating to Digitalspeed's violation of the TCPA, aiding and abetting, and conspiring to violate the TCPA.

1) Digitalspeed Communications, Inc. is a Pennsylvania Corporation ("Digitalspeed").

2) On information, Digitalspeed was the sender of the Unsolicited Faxes.

3) The removal numbers on the Faxes have been issued to Digitalspeed.

Incorporating the existing allegations in the Complaint, the foregoing allegations would state a cause of action against Digitalspeed.

### 2. Justice Requires Adding Mr. Pasternack Because Of His FCC Citation.

Plaintiff proposes to add the following allegations to the Second Amended Complaint relating to Mr. Pasternack's violation of the TCPA, aiding and abetting, and conspiring to violate the TCPA.

1) Defendant Adam Harris Pasternack a/k/a Adam Harris ("Pasternack") is an individual residing in the Commonwealth of Pennsylvania.

2) Pasternack is the sole owner and President of Digtalspeed and has been the sole owner and President of Digitalspeed since its incorporation in 2003.

3) Pasternack has been cited by the Federal Communications Commission in the past for the broadcasting of unsolicited facsimiles, to wit: FCC Complaint Number EB-05-TC-020.

4) Pasternack was cited by the FCC in 2005 when he was the sole owner and President of Digitalspeed.

5) Digitalspeed is the alter ego of Defendant Pasternack.

6) On information, Defendant Pasternack was the sender of the Unsolicited Faxes.

Incorporating the existing allegations in the Complaint, the foregoing allegations would state a cause of action against not only as an individual acting on his own behalf, but also as an individual acting under the corporate shield. The alter ego allegation is supported by the fact that although Digitalspeed appears to be the sender, it was Mr. Pasternack, *not Digitalspeed*, who was cited by the FCC for violating the TCPA. This demonstrates that Mr. Pasternack may be acting underneath Digitalspeed's shield. The phrase "on information" precedes "sender of the fax" because only extensive discovery will positively demonstrate whether Mr. Pasternack was acting underneath

Digitalspeed's corporate shield at the time he sent the Fax, or whether it was in fact Digitalspeed who sent the Fax.

### 3.  Justice Requires Adding Mrs. Pasternack As A Spouse.

Plaintiff proposes to add the following allegations to the Second Amended Complaint relating to Mrs. Pasternack.

> 1)  Alla Pasternack ("Mrs. Pasternack") is an individual residing in the Commonwealth of Pennsylvania and is the wife of Pasternack.

Plaintiff does not suggest Mrs. Pasternack was acting as a violator of the TCPA. Rather, Plaintiff proposes to add Mrs. Pasternack in her capacity as Mr. Pasternack's spouse pursuant to Arizona Revised Statutes § 25-215(d) ("In an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied:  first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation.").[4]

### 4.  Plaintiff Shall Strike Several Paragraphs Relating To Superlattice and Hybrid, Including All Conspiracy and Aiding and Abetting Counts.

Paragraphs 3-4, 10-15, 20-28 shall be struck from the First Amended Complaint. Additionally, the following Paragraphs shall be added in their stead:

> 1)  On or about May 20, 2008, Defendants sent an unsolicited fax to Plaintiff and the members of the Class (Exhibit 1), in violation of the TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000 for sending out the Unsolicited Fax.  On information, the cost for each fax is between 1 and 3 cents. This means that Defendants sent out between 666,667 and 2 million Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory

---

[4] See proposed Second Amended Complaint attached as Exhibit 7.

damages for the sum of $500 and $1,500 for each copy of the Unsolicited Fax broadcasted, for the total of between $333 million and $3 billion.

2) On or about June 4, 2008, Defendants sent an unsolicited fax to Plaintiff and the members of the Class (Exhibit 1), in violation of the TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000 for sending out the Unsolicited Fax. On information, the cost for each fax is between 1 and 3 cents. This means that Defendants sent out between 666,667 and 2 million Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages for the sum of $500 and $1,500 for each copy of the Unsolicited Fax broadcasted, for the total of between $333 million and $3 billion.

Also, should the Court permit Plaintiff leave to amend, Plaintiff proposes to alter the proposed defined class to the following: "All persons and/or entities that received an unsolicited advertisement promoting Hybrid Technologies, Inc. or Superlattice Power, Inc. stock via unsolicited facsimile containing the toll-free removal number 1-877-885-5720 or 1-877-283-0446."

Finally, all Conspiracy and Aiding and Abetting counts will be struck.

**B. Plaintiff Did Not Cause Any Undue Delay in This Proceeding**

This case is only 6 months old. Plaintiff could not target the identity of the sender of the Fax for approximately 3 months and used all diligence in its attempts. Once Plaintiff did identify Digitalspeed and Mr. Pasternack, it quickly filed a Second Amended Complaint. It was not until approximately two weeks ago the Court struck the Second Amended Complaint. Plaintiff has been diligent and prompt.

1

## IV. CONCLUSION

2      For the foregoing reasons, Plaintiff respectfully requests this motion be sustained and whatever

3  else this Court deems just and proper.

4

5

6  RESPECTFULLY SUBMITTED this 23rd day of December, 2008.

7

                              **LAW FIRM OF PETER STROJNIK**

8

9

10                             Peter Strojnik
                               Attorney for the Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 1

Peter Strojnik, Esq. – Arizona. State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation, | NO. 2:08-cv-1017 PHX -ROS |
| Plaintiff, | DECLARATION OF PETER STROJNIK IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT |
| vs. | |
| THE ENERGY BULL, et al. | |
| Defendants. | |

I, PETER STROJNIK, do hereby declare the following is true and correct under penalty of perjury.

1.  My name is Peter Strojnik. I have personal knowledge of all statements made herein.

2.  I am an attorney licensed to practice law in all federal and state courts in the State of Arizona.

3.  I am the attorney of record for the Plaintiff in the above-entitled matter ("Matter"). I make this Declaration in support of Plaintiff's Motion for Leave to Amend First Amended Complaint.

4.  The Matter is a Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. case ("TCPA"). I have developed specialized knowledge prosecuting TCPA cases and identifying the senders of facsimiles intended to be disguised. My specialized knowledge has been developed through experience, skill and legal research.

5.  Unsolicited facsimile advertisements often contain a "removal number", which is a toll-free number that purports to allow the receiver of the unsolicited advertisement to call removal

number to remove the receiver's fax number from the sender's list. The identity of the fax blaster in each particular case is most easily identified by identifying the person or entity who has been issued the removal number.

6. Identifying the issuee of the removal number can be a difficult task or a simple task. If Rule 26(d) requirements have been met in a particular case, the issuee can be identified by serving a subpoena on the owner of the removal number after the owner has been identified through the SMS/800 National Toll-Free Database. However, if the time for issuing subpoenas has not been reached due to Rule 26(d) requirements, I have enlisted several investigators across the country that have specialized knowledge in identifying the issuee of the removal number. With some removal numbers, the private investigators have a more difficult time identifying the issuee of a particular removal number, and it can take in excess of 6 months. The identification of Digitalspeed in this case was a difficult and more time-consuming task.

7. In the Matter, the issuance of a subpoena was not available until after I enlisted my investigators to identify the issuee to my investigators. Ultimately, on or around August 26, 2008, DC Fabrications d/b/a Phone Search Central identified the issuees of the removal numbers 877-885-5720 and 877-283-0446, which are removal numbers on four separate unsolicited facsimile advertisements purporting to be sent from "The Energy Bull." ("Removal Numbers").

8. The issuee of the Removal Numbers is Digitalspeed Communications, Inc. I currently represent clients in the following cases in which Digitalspeed has been identified as the sender of the facsimiles in each respective case:

   a. *Consumer Protection Corporation v. Radisson Hotels International, Inc. et al.*, United States District Court for the District of Arizona Cause No. cv-08-2208-PHX-NVW.

b. *Consumer Protection Corporation v. Playbox (US), Inc. et al.*, United States District Court for the District of Arizona Cause No. cv-08-2211-PHX-MHM.

c. *Consumer Protection Corporation v. Medefile International, Inc. et al.*, United States District Court for the District of Arizona Cause No. cv-08-1853-PHX-ROS.

d. *Peter Strojnik, P.C. v. Signalife, Inc. et al.*, United States District Court for the District of Arizona Cause No. 2:08-cv-1116-PHX-FJM ("other TCPA Cases").

9. In the other TCPA cases, I have conducted extensive research on Digitalspeed Communications, Inc. and its sole president and owner, Adam Harris Pasternack. My research has revealed, *inter alia*, that Mr. Pasternack was cited by the Federal Communications Commission in 2005 for a violation of the TCPA due to his broadcast of unsolicited facsimiles. Mr. Pasternack was the former sole owner and CEO of Faxquest International, Ltd., which was a fax transmission service that was located at the same office out of which Digitalspeed currently operates. Prior to Mr. Pasternack's ownership of Faxquest International, he was affiliated with General Fax, Inc., which was another fax transmission service in Pennsylvania and an a/k/a of Faxquest International.

10. In this Matter, there was no undue delay in identifying and subsequently attempting to prosecute Digitalspeed and Mr. Pasternack (and Mrs. Pasternack pursuant to A.R.S. 25-215(d)). My investigators took longer than usual to identify Digitalspeed in this instance. Digitalspeed was identified on or about August 26, 2008, which was approximately 2 ½ months after the initial Complaint was filed. Plaintiff attempted to file an amended complaint on or about September 3, 2008. Plaintiff investigated and attempted to prosecute Digitalspeed and Mr. Pasternack in the most prompt manner possible, but, as stated above, the identification of Digitalspeed in this Matter was a difficult task.

1

2

3       The foregoing is true and correct under penalty of perjury.

4

5   DATED this 23rd day of December, 2008.

6

7

8

9                                                        _____
                                                         Peter Strojnik
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

Peter Strojnik, Esq. – Arizona State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation, | ) NO. 2:08-cv-1116 PHX-FJM |
| | ) |
| Plaintiff, | ) **DECLARATION OF ANGELA COLLINS IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| vs. | ) |
| SIGNALIFE, INC., a Delaware Corporation; TRIPLE PLAY STOCK ALERT, a fictitious entity; DIGITALSPEED COMMUNICATIONS, INC., a Pennsylvania Corporation; INNOVATIVE COMMUNICATIONS, INC., a Pennsylvania Corporation; ADAM HARRIS PASTERNACK, an individual; ALLA PASTERNACK, an individual; UNIDENTIFIED DEFENDANTS 10-50, | ) |
| Defendants. | ) |

I, ANGELA COLLINS, declare the following to be true and correct:

1. My name is Angela Collins. I have personal knowledge of all statements made herein.

2. I am the owner of DC Fabrication, which does business as Phone Search Central.

3. Phone Search Central is in the business of professionally investigating the identity of the owners and issuees of telephone and facsimile numbers.

4. Phone Search Central has a working relationship with attorney Peter K. Strojnik. Over the past several months, Mr. Strojnik requested that Phone Search Central investigate the following telephone and facsimile numbers:

    a. 888-277-7349; and

    b. 877-885-5720; and

    c. 877-283-0446; and

    d. 877-283-0449; and

    e. 888-277-7346; and

    f. 877-234-9547.

5. Phone Search Central requested our primary investigator, Leslie Collins, to investigate who owns the numbers above and to whom the owner issued said numbers.

6. Lesie Collins is the co-owner of Phone Search Central.

7. Mr. Collins performed the investigations as requested. He determined that the telephone numbers listed above in Paragraph 4 herein are carried by Qwest Communications International, Inc. His investigation further revealed that Qwest Communications issued the telephone numbers to Digitalspeed Communications, Inc. His investigation further revealed that Digitalspeed Communications receives billing for these telephone numbers at 2400 Market Street, Suite 423, Philadelphia, Pennsylvania 19103.

8. Phone Search Central electronically mailed Mr. Collins' investigation results to Mr. Strojnik.

By my signature below, I symbolize and swear that the foregoing statements are true and correct under penalty of perjury under the laws of the State of Arizona.

DATED this _15_ day of December, 2008.

PHONE SEARCH SENTRAL

By: Angela Collins

# EXHIBIT 3

https://www.corporations.state.pa.us/corp/soskb/Corp.asp?2025838



# Corporations

Online Services | Corporations | Forms | Contact Corporations | Business Services

Search
By Business Name
By Business Entity ID
Verify
Verify Certification
Online Orders
Register for Online
Orders
Order Good Standing
Order Certified Documents
Order Business List
My Images
Search for Images

## Business Entity
## Filing History

**Date:** 12/22/2008   (Select the link above to view the Business Entity's Filing History)

## Business Name History

| Name | Name Type |
| --- | --- |
| DIGITALSPEED COMMUNICATIONS, INC. | Current Name |
| DIGITALSPEED COMMUNICATIONS, INC. | Prior Name |

## Business Corporation - Domestic - Information

| | |
| --- | --- |
| **Entity Number:** | 3135286 |
| **Status:** | Active |
| **Entity Creation Date:** | 4/3/2003 |
| **State of Business.:** | PA |
| **Registered Office Address:** | 1811 CHESTNUT ST STE 304 |
| | PHILA PA 19103- |
| **Mailing Address:** | No Address |

## Officers

| | |
| --- | --- |
| **Name:** | **STEPHEN SCHURER** |
| **Title:** | **President** |
| **Address:** | CO MANAGEMENT INC 1628 JFK BLVD STE 2300 PHILADELPHIA PA 19103-51 |

Home | Site Map | Site Feedback | View as Text Only | Employment

# EXHIBIT 4

View: <u>Results List</u> | **Full** | <u>Visualize Re~~port~~</u> **1 of 4** NEXT ▷

**Search:** <u>Public Records</u> > <u>Comprehensive Business Report Search</u> 📷 > <u>Search Results</u> > Business Report Request

**Terms:** company(**faxquest international**) ( <u>Edit Search</u> | <u>New Search</u> )

<u>Save as Alert</u>
☐ Select for Delivery

## Report Contents

<u>Subject Summary</u>
<u>Name</u>
<u>Variations/DBAs (4)</u>
<u>Phone Summary (2)</u>
<u>Addresses (10)</u>
Profile Information
Sales Information
Parent Company
<u>Executives (5)</u>
Registered Agents
<u>Industry</u>
<u>Information (1)</u>
Company ID Numbers
<u>Internet Domains (5)</u> $
Bankruptcies
<u>Judgments and</u>
<u>Liens (3)</u>
<u>UCC Liens (1)</u>
Real Property
Motor Vehicles
Watercrafts
Aircrafts
Professional Licenses
<u>Business</u>
<u>Associates (90)</u>
<u>Person Associates (7)</u>
<u>Sources (51)</u>

FOR INFORMATIONAL PURPOSES ONLY
Copyright 2008 LexisNexis
a division of Reed Elsevier Inc. All Rights Reserved.

| Name | Address | Phone | County/FIPS |
|------|---------|-------|-------------|
| FAXQUEST INTERNATIONAL LTD | 1811 CHESTNUT ST PHILADELPHIA, PA 19103-3721 | (215) 405-9100 | PHILADELPHIA |

## Name Variations/DBAs

<u>View Name Variation Sources</u>

| # | Name Variations | Actions |
|---|-----------------|---------|
| 1. | FAXQUEST | <u>View Source</u> |
| 2. | FAXQUEST INTERNATIONAL LT | <u>View Source</u> |
| 3. | FAXQUEST INTERNATIONAL LTD INC | <u>View Source</u> |
| 4. | GENERAL FAX, INC. | <u>View Source</u> |

## Phone Summary

<u>View Phone Variation Sources</u>

| # | Telephone Number | Actions |
|---|------------------|---------|
| 1. | (215) 405-9100 | <u>View Source</u> |
| 2. | (610) 277-1722 | <u>View Source</u> |

## Addresses

<u>View Address Variation Sources</u>

| # | Address | County | MSA | Actions |
|---|---------|--------|-----|---------|
| 1. | 2029 CHANCELLOR ST PHILADELPHIA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 2. | 1811 CHESTNUT ST PHILA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 3. | 1811 CHESTNUT ST 304 PHILADELPHIA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 4. | 2400 MARKET ST 423 PHILADELPHIA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 5. | CONTINENTAL BUSINESS CTR NORRISTOWN, PA 19401 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 6. | CONTINENTAL BUSINESS CENTER CTR BRIDGEPORT, PA 19405 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 7. | CONTINENTAL BUSINESS CTR BRIDGEPORT, PA 19405 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 8. | 55 E FRONT ST BRIDGEPORT, PA 19405 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 9. | CONTINENTAL BUSINESS CTR LAFAYETTE HILL, PA 19444 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 10. | NORRISTOWN, PA 19487 | CHESTER | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |

## Executives

| # | Name | Titles | Actions |
|---|------|--------|---------|
| 1. | MASTERGEORGE, CHRISTOPER | MANAGER | |
| 2. | PASTERNACK, ADAM | CEO, CEO | <u>Get Report</u> |
| 3. | PASTERNECK, ADAM | OWNER | |
| 4. | STEFANO, CHRISTOPHE C | CEO, CEO, CEO, CEO | |

# EXHIBIT 5

Yahoo!   My Yahoo!   Mail   More          Make Y! My Homepage          New User? Sign Up   Sign In   Help

# YAHOO! LOCAL                    Search          WEB SEARCH

(0 ratings)

## Faxquest International Limited
(215) 405-9100
1811 Chestnut St, Philadelphia, PA 19103 |
Cross Streets: Between S 18th St and S 19th St



## Business Overview     Add info

**Categories:** Fax Services

Know more details about this business? Click here to share them with your neighbors.

Be the first on your block - Sign in to write a review of this business.

                                        CATEGORY SPONSORS

Online Fax Service - Myfax.com
www.myfax.com/no-hidden-fees - Send & Receive Faxes through Email. Easy & reliable. No hidden fees.

Fax Services - eFax Official Site
eFax.com/faxingservices - Try eFax free. Send faxes in 2 minutes by email. Easy faxing anywhere.

Fax Online $7.95/Month
RapidFAX.com - Your own Toll Free Fax Number. No Setup Fee. Free One Month Trial.

See your message here

ADVERTISEMENT



You Might Also Like

Wilson's Check Cashing
1201 E Susquehanna Ave, Philadelphia, PA

Printer's Place
1310 Walnut St, Philadelphia, PA

American Banknote Card Services
102 Commerce Dr, Moorestown, NJ

Shadeland Pharmacy
403 Shadeland Ave, Drexel Hill, PA

More Search Options

Search the web for Faxquest International
Limited in Philadelphia, PA

Reviews of Philadelphia Local Services on
Yelp.com

Philadelphia City Guide > Professional Services > Telecommunications > Fax Services > Faxquest International Limited

Some business information provided by InfoUSA ®, Omaha, Nebraska Copyright © 2008.
Some business information provided by Wcities & Discoverourtown.com. Copyright © 2008. All rights reserved.
Copyright © 2008 Yahoo! Inc. All rights reserved. Copyright/IP Policy
Privacy Policy | Terms of Service | Add/Edit a Business | Yahoo! Maps Terms of Use | Help | Additional Terms of Service

Yahoo!   My Yahoo!   Mail   More          **Make Y! My Homepage**          **New User?** Sign Up    Sign In    Help

 **LOCAL**
Yellow Pages                    Search                    **WEB SEARCH**


**PREVACID** If you suffer from persistent heartburn two or more days a week, despite treatment and diet
LANSOPRAZOLE changes, it could be acid reflux disease. Prescription Prevacid is used for acid reflux disease.
Prevacid may not be right for everyone and has a low occurrence of side effects such as diarrhea,
abdominal pain and nausea. Symptom relief does not rule out other serious stomach conditions.
Please see the complete Prescribing Information and talk to your doctor.

# Yahoo! Yellow Pages

**Your Search:**                    Search                    **Location:** ★ Philadelphia PA

Search by Category or Business Name (e.g. Hotel or Holiday Inn)          Save Location | Change Location

**Top > Other Professional Services > Telecommunications > Fax Services**

Sort by:    **Name**    Distance                                        Showing 1 to 6 of 6

Business Name:                                          Address:

**Action Fax Inc**                                       8800 Essington Ave
(215) 937-0838  See reviews on Yahoo! Local              **Philadelphia, PA** Map

**Antech Services**                                      4732 N Camac St
(215) 329-5281  See reviews on Yahoo! Local              **Philadelphia, PA** Map

**Fatima's Fashions**                                    4050 Lancaster Ave
(215) 222-1715  See reviews on Yahoo! Local              **Philadelphia, PA** Map

**Faxquest International Ltd**                            2400 Market St # 423
(215) 405-9100  See reviews on Yahoo! Local              **Philadelphia, PA** Map

**Printer's Place**                                      1310 Walnut St
(215) 546-6562  Web Site  See reviews on Yahoo! Local    **Philadelphia, PA** Map

**Ups Store**                                            7715 Crittenden St
(215) 242-2800  See reviews on Yahoo! Local              **Philadelphia, PA** Map

Sort by:   **Name** | Distance                                        Showing 1-6 of 6

                                                         **Beyond Philadelphia**

**Beyond Philadelphia**

**Sponsor Results** (What's this?)

Quality Suites Baton Rouge from $105.11 Low Rate Guarantee in Baton Rouge, LA. Plus get up to $100 back.
www.GottaGoTravel.com

Quality Suites Baton Rouge Reservations Guaranteed Low Rates in Baton Rouge, Louisiana Call Toll-free.
www.DiscountHotelWorld.com

Uniquely Louisiana Come experience Baton Rouge's plantations, fine cuisine, history, art.
www.visitbatonrouge.com

Some links and information accompanying the All Businesses listings may be provided by Yahoo! and Yahoo!'s content providers, and are not affiliated
with or endorsed by the listers or their listing agents.

## Modify your Search

**SEARCH:**

(by name or category)

**Locations:**   ---none selected---

(Address, Intersection or Airport Code)

**Address:**

(Optional)

**Tip:** If you specify an address, we will search for businesses closest to that address.

**City, State or Zip:**   Philadelphia PA

**Country:**   United States

Continue

Business Information provided by InfoUSA ®, Omaha, Nebraska Copyright © 2008.
All Rights Reserved. Use Subject to License.

Driving Directions - Local - Maps - Real Estate - Yellow Pages

Copyright © 2008 Yahoo! Inc. All rights reserved. Help - Copyright/IP Policy - Privacy Policy - Terms of Service

# EXHIBIT 6

advertisements for property, goods, or services offered by another entity (see attachments).3  As explained in detail below, section 227(b)(1)(C) of the Communications Act and section 64.1200(a)(3) of the Commission's rules generally prohibit the delivery of unsolicited advertisements to telephone facsimile machines.

     We direct you to respond to this Citation and Letter of Inquiry by providing the information and documents specified below no later than 30 days after the date of this correspondence.

     I.    CITATION FOR VIOLATIONS OF 47 U.S.C. § 227(b)(1)(C)
            AND 47 C.F.R. § 64.1200(a)(3)

     Section 227(b)(1)(C) of the Communications Act makes it ``unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.'' 4   The term ``unsolicited advertisement'' is defined in the Act and the Commission's rules as ``any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.''5  Under Commission rules and orders currently in effect, the Commission considers an established business relationship between a fax sender and recipient to constitute prior express invitation or permission to send a facsimile advertisement.6  Mere distribution or publication of a fax number, however, does not
     establish consent to receive advertisements by fax.7

     Although entities that merely transmit or `broadcast'' facsimile messages on behalf of others are not generally liable for compliance with the prohibition on faxing unsolicited advertisements, the exemption from liability does not exist when a facsimile broadcaster8 has ``a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions.''9  Supplying the telephone facsimile numbers to which messages are sent or influencing the content of the fax message, among other things, evidence a high degree of involvement. Therefore, in certain circumstances, fax broadcasters may be held liable for unsolicited advertisements that they transmit to telephone facsimile machines on behalf of other entities. You may be subject to  monetary forfeitures if, among other things, you: (1) are highly involved in sending unsolicited facsimile advertisements on behalf of any party, as evidenced by such actions as supplying the telephone facsimile numbers to which you transmit unsolicited advertisements or influencing the content of fax messages; or (2) continue to transmit facsimile advertisements for the entity or entities for whom the Company faxed the advertisements that are attached to this correspondence without taking steps to ensure that either that entity or your company has an established business relationship with each recipient or has otherwise obtained each recipient's permission to fax advertisements.

     Finally, section 63.318(d) of the Commission's rules requires that a fax broadcaster with a high degree of involvement in the messages it transmits include on each message the name under which it is registered to conduct business with the relevant State Corporation Commission or comparable regulatory

Peter Strojnik, Esq. – Arizona. State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*
Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation, | ) NO.  2:08-cv-1017 PHX -ROS |
| | ) |
| | ) **RULE 15 MOTION FOR LEAVE TO AMEND** |
| Plaintiff, | ) **FIRST AMENDED COMPLAINT** |
| | ) |
| vs. | ) |
| | ) |
| THE ENERGY BULL, et al. | ) |
| | ) |
| Defendants. | ) |

### I.  INTRODUCTION

Plaintiff seeks leave to amend the First Amended Complaint in the above-entitled action pursuant to Federal Rules of Civil Procedure § 15(a)(2).   Justice requires adding Adam Harris Pasternack and his wife, Alla Pasternack, as well as Digitalspeed Communications, Inc. because it was discovered on or about August 26, 2008 that they were the parties responsible for the sending of facsimile at issue.

The supporting documents will demonstrate that Digitalspeed was the sender of the Fax.  The supporting documents will demonstrate and corroborate Plaintiff's evidence that Mr. Pasternack, the sole owner and President of Digitalspeed, has in the past acted under Digitalspeed's corporate shield to broadcast facsimiles.  Mrs. Pasternack will be added as Mr. Pasternack's spouse pursuant to A.R.S. § 25-215(d).

1

Peter Strojnik, Esq. – Arizona. State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK

2

3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012

3

Telephone: 602-524-6602
Facsimile: 602-296-0135

4

E-mail: *Strojnik@aol.com*

5

Attorney for Plaintiff

6

7

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

8

PETER STROJNIK, P.C., an Arizona
Corporation,

9

10

Plaintiff,

11

vs.

12

THE ENERGY BULL, et al.

13

Defendants.

) NO.  2:08-cv-1017 PHX -ROS
)
)  **RULE 15 MOTION FOR LEAVE TO AMEND**
)          **FIRST AMENDED COMPLAINT**
)
)
)
)
)
)
)

14

15

## I. INTRODUCTION

16

Plaintiff seeks leave to amend the First Amended Complaint in the above-entitled action

17

pursuant to Federal Rules of Civil Procedure § 15(a)(2).   Justice requires adding Adam Harris

18

Pasternack and his wife, Alla Pasternack, as well as Digitalspeed Communications, Inc. because it was

19

discovered on or about August 26, 2008 that they were the parties responsible for the sending of

20

facsimile at issue.

21

The supporting documents will demonstrate that Digitalspeed was the sender of the Fax.   The

22

supporting documents will demonstrate and corroborate Plaintiff's evidence that Mr. Pasternack, the

23

sole owner and President of Digitalspeed, has in the past acted under Digitalspeed's corporate shield to

24

broadcast facsimiles.   Mrs. Pasternack will be added as Mr. Pasternack's spouse pursuant to A.R.S. §

25

25-215(d).

## II.  STATEMENT OF FACTS

On June 2, 2008, Peter Strojnik, P.C. filed a complaint against The Energy Bull, a fictitious entity, for its violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA), aiding and abetting, and conspiring to violate the TCPA (Doc. 1).  On June 24, 2008, Plaintiff filed a First Amended Complaint as of Right alleging the same causes of action against Hybrid Technologies and Superlattice Power (Doc. 10).

Prior to and between the date of filing Doc 10 and August 26, 2008, Plaintiff was unaware of the identity of the actual sender of the subject facsimile giving rise to the TCPA violation (the "Fax"), but was aware that Hybrid, Superlattice and "The Energy Bull" were involved in the violation (Strojnik Declaration, Exhibit 1).  It was not until on or about August 26, 2008 that Plaintiff discovered the Fax sender's identity.  Plaintiff discovered that Digitalspeed and Adam Pasternack were the principal violators of the TCPA for their acts of sending the Fax (Strojnik Dec., ¶8) (Collins Declaration, ¶4, Exhibit 2).

Digitalspeed Communications, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania (Pennsylvania Secretary of State, Exhibit 3).   Mr. Pasternack represents that he is the President of Digitalspeed (See Doc 9-2, No. 2:08-cv-02205-PHX-NVW).

The TCPA and its accompanying regulations has produced stealthy and crafty violators of the federal fax transmission rules.  Most often, the fax blasters hide their identity by omitting the caller identification on the top of the particular fax and/or not providing any information on the fax that can lead to the identification of the fax blaster.  Sometimes, however, the fax blaster identifies itself by placing its telephone number on the bottom of the fax in a meager attempt to comply with TCPA rules and regulations.  This number is the removal number, and it purports to allow the caller of said number to remove himself/herself from the fax blaster's "fax list."  Invariably, the fax blaster's identity can be

targeted by identifying the issuee of the removal number (Strojnik Dec., ¶5).  In this case, it was not until on or about August 26, 2008 that Plaintiff identified Digitalspeed as the issuee of the removal number (Strojnik Dec., ¶7).

In prior and contemporaneous cases[1], Plaintiff's counsel has conducted extensive research on Mr. Pasternack and Digitalspeed and their involvement in the violation of the TCPA.  For example, the research revealed that Digitalspeed was the sender of at least 10 other unsolicited faxes not at issue in this case (Strojnik Dec., ¶8) (Collins Dec., ¶4).  Mr. Pasternack was the CEO of Faxquest International, Ltd., which is a fax transmission service in Philadelphia that had the same exact office as Digitalspeed (Lexis SmartLinx Doc., Exhibit 4) (YellowPages.com, Exhibit 5)[2].  In 2005, the FCC cited Mr. Pasternack, *not Digitalspeed*, for a violation of the TCPA for his broadcasting of unsolicited facsimiles (Exhibit 6).[3]

In light of Plaintiff's counsel's already-complete research on Digitalspeed and Mr. Pasternack coupled with the identification of Digitalspeed as the sender of the Fax, Plaintiff filed its Second Amended Complaint naming Digitalspeed and Mr. Pasternack as Defendants one week after identifying them.  On November 25, 2008, the Court in this matter struck the Second Amended Complaint pursuant to FRCP 15(a)(2) although there was no opposition by Defendants Hybrid and Superlattice (Doc. 28).  Plaintiff now proposes to add Digitalspeed and the Pasternacks to the proposed Second Amended Complaint (Exhibit 7).

---

[1] Plaintiff's counsel currently represents Consumer Protection Corporation and Peter Strojnik, P.C. in several other TCPA cases in which Digitalspeed and Mr. Pasternack are named defendants.  These cases are as follows: *Consumer Protection Corporation v. Medefile International, Inc. et al.*, No. cv-08-1853-PHX-ROS; *Consumer Protection Corporation v. Playbox (US), Inc. et al.*, No. cv-08-2211-PHX-MHM; *Consumer Protection Corporation v. Radisson Hotels Int'l, Inc. et al.*, No. cv-08-2205-PHX-NVW; *Peter Strojnik, P.C. v. Signalife, Inc. et al.*, No. cv-08-1116-PHX-FJM.
[2] If the Court reviews Exhibits 4 and 5 together, they will demonstrate that Faxquest International and Digitalspeed both did/do reside at 1811 Chestnut Street, Suite 304, Philadelphia, Pennsylvania 19103.
[3] The FCC Citation is addressed to "Adam Harris", which is an a/k/a for Adam Harris Pasternack.

# III. SUPPORTING LAW

## A. The Rule 15(a) Standard

FRCP § 15(a)(2) states in relevant part: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." In deciding a Motion to Amend, the Court is guided by the principle that matters be decided on the merits rather than on technicalities. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded" (quoting FRCP 15(a))). "[A] court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits, rather than on pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The liberal policy of granting leave to amend is "not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "Thus, a motion to make an '[a]mendment is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim." *Id.* (citing *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir. 1982).

### 1. Justice Requires Adding Digitalspeed Because Of Its Identity As The Sender Of The Fax.

Plaintiff proposes to add the following allegations to the Second Amended Complaint relating to Digitalspeed's violation of the TCPA, aiding and abetting, and conspiring to violate the TCPA.

1) Digitalspeed Communications, Inc. is a Pennsylvania Corporation ("Digitalspeed").

2) On information, Digitalspeed was the sender of the Unsolicited Faxes.

3) The removal numbers on the Faxes have been issued to Digitalspeed.

Incorporating the existing allegations in the Complaint, the foregoing allegations would state a cause of action against Digitalspeed.

## 2.  **Justice Requires Adding Mr. Pasternack Because Of His FCC Citation.**

Plaintiff proposes to add the following allegations to the Second Amended Complaint relating to Mr. Pasternack's violation of the TCPA, aiding and abetting, and conspiring to violate the TCPA.

> 1) Defendant Adam Harris Pasternack a/k/a Adam Harris ("Pasternack") is an individual residing in the Commonwealth of Pennsylvania.
>
> 2) Pasternack is the sole owner and President of Digtalspeed and has been the sole owner and President of Digitalspeed since its incorporation in 2003.
>
> 3) Pasternack has been cited by the Federal Communications Commission in the past for the broadcasting of unsolicited facsimiles, to wit:  FCC Complaint Number EB-05-TC-020.
>
> 4) Pasternack was cited by the FCC in 2005 when he was the sole owner and President of Digitalspeed.
>
> 5) Digitalspeed is the alter ego of Defendant Pasternack.
>
> 6) On information, Defendant Pasternack was the sender of the Unsolicited Faxes.

Incorporating the existing allegations in the Complaint, the foregoing allegations would state a cause of action against not only as an individual acting on his own behalf, but also as an individual acting under the corporate shield.  The alter ego allegation is supported by the fact that although Digitalspeed appears to be the sender, it was Mr. Pasternack, *not Digitalspeed*, who was cited by the FCC for violating the TCPA.    This demonstrates that Mr. Pasternack may be acting underneath Digitalspeed's shield.  The phrase "on information" precedes "sender of the fax" because only extensive discovery will positively demonstrate whether Mr. Pasternack was acting underneath

Digitalspeed's corporate shield at the time he sent the Fax, or whether it was in fact Digitalspeed who sent the Fax.

### 3. Justice Requires Adding Mrs. Pasternack As A Spouse.

Plaintiff proposes to add the following allegations to the Second Amended Complaint relating to Mrs. Pasternack.

> 1) Alla Pasternack ("Mrs. Pasternack") is an individual residing in the Commonwealth of Pennsylvania and is the wife of Pasternack.

Plaintiff does not suggest Mrs. Pasternack was acting as a violator of the TCPA. Rather, Plaintiff proposes to add Mrs. Pasternack in her capacity as Mr. Pasternack's spouse pursuant to Arizona Revised Statutes § 25-215(d) ("In an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied:  first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation.").[4]

### 4. Plaintiff Shall Strike Several Paragraphs Relating To Superlattice and Hybrid, Including All Conspiracy and Aiding and Abetting Counts.

Paragraphs 3-4, 10-15, 20-28 shall be struck from the First Amended Complaint. Additionally, the following Paragraphs shall be added in their stead:

> 1) On or about May 20, 2008, Defendants sent an unsolicited fax to Plaintiff and the members of the Class (Exhibit 1), in violation of the TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000 for sending out the Unsolicited Fax.  On information, the cost for each fax is between 1 and 3 cents.  This means that Defendants sent out between 666,667 and 2 million Unsolicited Faxes.  Pursuant to the TCPA, Defendants are liable in statutory

---

[4] See proposed Second Amended Complaint attached as Exhibit 7.

damages for the sum of $500 and $1,500 for each copy of the Unsolicited Fax broadcasted, for the total of between $333 million and $3 billion.

2) On or about June 4, 2008, Defendants sent an unsolicited fax to Plaintiff and the members of the Class (Exhibit 1), in violation of the TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000 for sending out the Unsolicited Fax.  On information, the cost for each fax is between 1 and 3 cents. This means that Defendants sent out between 666,667 and 2 million Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages for the sum of $500 and $1,500 for each copy of the Unsolicited Fax broadcasted, for the total of between $333 million and $3 billion.

Also, should the Court permit Plaintiff leave to amend, Plaintiff proposes to alter the proposed defined class to the following: "All persons and/or entities that received an unsolicited advertisement promoting Hybrid Technologies, Inc. or Superlattice Power, Inc. stock via unsolicited facsimile containing the toll-free removal number 1-877-885-5720 or 1-877-283-0446."

Finally, all Conspiracy and Aiding and Abetting counts will be struck.

**B.  Plaintiff Did Not Cause Any Undue Delay in This Proceeding**

This case is only 6 months old.  Plaintiff could not target the identity of the sender of the Fax for approximately 3 months and used all diligence in its attempts.  Once Plaintiff did identify Digitalspeed and Mr. Pasternack, it quickly filed a Second Amended Complaint.  It was not until approximately two weeks ago the Court struck the Second Amended Complaint.  Plaintiff has been diligent and prompt.

1

## IV. CONCLUSION

2          For the foregoing reasons, Plaintiff respectfully requests this motion be sustained and whatever

3  else this Court deems just and proper.

4

5

6

7  RESPECTFULLY SUBMITTED this 23rd day of December, 2008.

8                                              **LAW FIRM OF PETER STROJNIK**

9

10                                             Peter Strojnik
                                               Attorney for the Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 1

Peter Strojnik, Esq. – Arizona. State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> THE ENERGY BULL, et al. <br><br> Defendants. | ) NO.  2:08-cv-1017 PHX -ROS <br> ) <br> ) **DECLARATION OF PETER STROJNIK IN** <br> ) **SUPPORT OF PLAINTIFF'S MOTION FOR** <br> ) **LEAVE TO AMEND FIRST AMENDED** <br> ) **COMPLAINT** <br> ) <br> ) <br> ) <br> ) <br> ) |

I, PETER STROJNIK, do hereby declare the following is true and correct under penalty of perjury.

1.  My name is Peter Strojnik.  I have personal knowledge of all statements made herein.

2.  I am an attorney licensed to practice law in all federal and state courts in the State of Arizona.

3.  I am the attorney of record for the Plaintiff in the above-entitled matter ("Matter").  I make this Declaration in support of Plaintiff's Motion for Leave to Amend First Amended Complaint.

4.  The Matter is a Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. case ("TCPA").  I have developed specialized knowledge prosecuting TCPA cases and identifying the senders of facsimiles intended to be disguised.  My specialized knowledge has been developed through experience, skill and legal research.

5.  Unsolicited facsimile advertisements often contain a "removal number", which is a toll-free number that purports to allow the receiver of the unsolicited advertisement to call removal

number to remove the receiver's fax number from the sender's list. The identity of the fax blaster in each particular case is most easily identified by identifying the person or entity who has been issued the removal number.

6. Identifying the issuee of the removal number can be a difficult task or a simple task. If Rule 26(d) requirements have been met in a particular case, the issuee can be identified by serving a subpoena on the owner of the removal number after the owner has been identified through the SMS/800 National Toll-Free Database. However, if the time for issuing subpoenas has not been reached due to Rule 26(d) requirements, I have enlisted several investigators across the country that have specialized knowledge in identifying the issuee of the removal number. With some removal numbers, the private investigators have a more difficult time identifying the issuee of a particular removal number, and it can take in excess of 6 months. The identification of Digitalspeed in this case was a difficult and more time-consuming task.

7. In the Matter, the issuance of a subpoena was not available until after I enlisted my investigators to identify the issuee to my investigators. Ultimately, on or around August 26, 2008, DC Fabrications d/b/a Phone Search Central identified the issuees of the removal numbers 877-885-5720 and 877-283-0446, which are removal numbers on four separate unsolicited facsimile advertisements purporting to be sent from "The Energy Bull." ("Removal Numbers").

8. The issuee of the Removal Numbers is Digitalspeed Communications, Inc. I currently represent clients in the following cases in which Digitalspeed has been identified as the sender of the facsimiles in each respective case:

   a. *Consumer Protection Corporation v. Radisson Hotels International, Inc. et al.*, United States District Court for the District of Arizona Cause No. cv-08-2208-PHX-NVW.

b.  *Consumer Protection Corporation v. Playbox (US), Inc. et al.*, United States District Court for the District of Arizona Cause No. cv-08-2211-PHX-MHM.

c.  *Consumer Protection Corporation v. Medefile International, Inc. et al.*, United States District Court for the District of Arizona Cause No. cv-08-1853-PHX-ROS.

d.  *Peter Strojnik, P.C. v. Signalife, Inc. et al.*, United States District Court for the District of Arizona Cause No. 2:08-cv-1116-PHX-FJM ("other TCPA Cases").

9.  In the other TCPA cases, I have conducted extensive research on Digitalspeed Communications, Inc. and its sole president and owner, Adam Harris Pasternack. My research has revealed, *inter alia*, that Mr. Pasternack was cited by the Federal Communications Commission in 2005 for a violation of the TCPA due to his broadcast of unsolicited facsimiles. Mr. Pasternack was the former sole owner and CEO of Faxquest International, Ltd., which was a fax transmission service that was located at the same office out of which Digitalspeed currently operates. Prior to Mr. Pasternack's ownership of Faxquest International, he was affiliated with General Fax, Inc., which was another fax transmission service in Pennsylvania and an a/k/a of Faxquest International.

10. In this Matter, there was no undue delay in identifying and subsequently attempting to prosecute Digitalspeed and Mr. Pasternack (and Mrs. Pasternack pursuant to A.R.S. 25-215(d)). My investigators took longer than usual to identify Digitalspeed in this instance. Digitalspeed was identified on or about August 26, 2008, which was approximately 2 ½ months after the initial Complaint was filed. Plaintiff attempted to file an amended complaint on or about September 3, 2008. Plaintiff investigated and attempted to prosecute Digitalspeed and Mr. Pasternack in the most prompt manner possible, but, as stated above, the identification of Digitalspeed in this Matter was a difficult task.

1

2

3        The foregoing is true and correct under penalty of perjury.

4

5     DATED this 23rd day of December, 2008.

6

7

8

9                                          _____
                                           Peter Strojnik
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

Peter Strojnik, Esq. – Arizona State Bar No. 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: *Strojnik@aol.com*

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation, | ) NO. 2:08-cv-1116 PHX-FJM<br>)<br>) **DECLARATION OF ANGELA COLLINS IN** |
| Plaintiff, | ) **SUPPORT OF PLAINTIFF'S RESPONSE IN** |
| | ) **OPPOSITION TO DEFENDANT'S MOTION TO** |
| vs. | ) **DISMISS**<br>) |
| SIGNALIFE, INC., a Delaware Corporation; TRIPLE PLAY STOCK ALERT, a fictitious entity; DIGITALSPEED COMMUNICATIONS, INC., a Pennsylvania Corporation; INNOVATIVE COMMUNICATIONS, INC., a Pennsylvania Corporation; ADAM HARRIS PASTERNACK, an individual; ALLA PASTERNACK, an individual; UNIDENTIFIED DEFENDANTS 10-50, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

I, ANGELA COLLINS, declare the following to be true and correct:

1. My name is Angela Collins. I have personal knowledge of all statements made herein.

2. I am the owner of DC Fabrication, which does business as Phone Search Central.

3. Phone Search Central is in the business of professionally investigating the identity of the owners

   and issuees of telephone and facsimile numbers.

4. Phone Search Central has a working relationship with attorney Peter K. Strojnik. Over the past several months, Mr. Strojnik requested that Phone Search Central investigate the following telephone and facsimile numbers:

    a.  888-277-7349; and

    b.  877-885-5720; and

    c.  877-283-0446; and

    d.  877-283-0449; and

    e.  888-277-7346; and

    f.  877-234-9547.

5. Phone Search Central requested our primary investigator, Leslie Collins, to investigate who owns the numbers above and to whom the owner issued said numbers.

6. Lesie Collins is the co-owner of Phone Search Central.

7. Mr. Collins performed the investigations as requested. He determined that the telephone numbers listed above in Paragraph 4 herein are carried by Qwest Communications International, Inc. His investigation further revealed that Qwest Communications issued the telephone numbers to Digitalspeed Communications, Inc. His investigation further revealed that Digitalspeed Communications receives billing for these telephone numbers at 2400 Market Street, Suite 423, Philadelphia, Pennsylvania 19103.

8. Phone Search Central electronically mailed Mr. Collins' investigation results to Mr. Strojnik.

By my signature below, I symbolize and swear that the foregoing statements are true and correct under penalty of perjury under the laws of the State of Arizona.

DATED this $15$ day of December, 2008.

**PHONE SEARCH SENTRAL**

By: Angela Collins

# EXHIBIT 3

https://www.corporations.state.pa.us/corp/soskb/Corp.asp?2025838



# Corporations

Online Services | Corporations | Forms | Contact Corporations | Business Services

Search
By Business Name
By Business Entity ID
Verify
Verify Certification
Online Orders
Register for Online
Orders
Order Good Standing
Order Certified Documents
Order Business List
My Images
Search for Images

## Business Entity
## Filing History

Date: 12/22/2008 (Select the link above to view the Business Entity's Filing History)

## Business Name History

| Name | Name Type |
|---|---|
| DIGITALSPEED COMMUNICATIONS, INC. | Current Name |
| DIGITALSPEED COMMUNICATIONS, INC. | Prior Name |

## Business Corporation - Domestic - Information

| | |
|---|---|
| **Entity Number:** | 3135286 |
| **Status:** | Active |
| **Entity Creation Date:** | 4/3/2003 |
| **State of Business.:** | PA |
| **Registered Office Address:** | 1811 CHESTNUT ST STE 304 |
| | PHILA PA 19103- |
| **Mailing Address:** | No Address |

## Officers

| | |
|---|---|
| **Name:** | **STEPHEN SCHURER** |
| **Title:** | **President** |
| **Address:** | CO MANAGEMENT INC 1628 JFK BLVD STE 2300 PHILADELPHIA PA 19103-51 |

Home | Site Map | Site Feedback | View as Text Only | Employment

# EXHIBIT 4

View: <u>Results List</u> | **Full** | <u>Visualize Report</u>   1 of 4   NEXT ▶

**Search:**   <u>Public Records</u> > <u>Comprehensive Business Report Search</u> > <u>Search Results</u> > Business Report Request

**Terms:**   company(**faxquest international**) ( <u>Edit Search</u> | <u>New Search</u> )

Save as Alert

☐ Select for Delivery

## Report Contents

<u>Subject Summary</u>
<u>Name</u>
<u>Variations/DBAs (4)</u>
<u>Phone Summary (2)</u>
<u>Addresses (10)</u>
Profile Information
Sales Information
Parent Company
<u>Executives (5)</u>
Registered Agents
<u>Industry</u>
<u>Information (1)</u>
Company ID Numbers
<u>Internet Domains (5)</u> $
Bankruptcies
<u>Judgments and</u>
<u>Liens (3)</u>
<u>UCC Liens (1)</u>
Real Property
Motor Vehicles
Watercrafts
Aircrafts
Professional Licenses
<u>Business</u>
<u>Associates (90)</u>
<u>Person Associates (7)</u>
<u>Sources (51)</u>

FOR INFORMATIONAL PURPOSES ONLY
Copyright 2008 LexisNexis
a division of Reed Elsevier Inc. All Rights Reserved.

| Name | Address | Phone | County/FIPS |
|---|---|---|---|
| FAXQUEST INTERNATIONAL LTD | 1811 CHESTNUT ST PHILADELPHIA, PA 19103-3721 | (215) 405-9100 | PHILADELPHIA |

## Name Variations/DBAs      <u>View Name Variation Sources</u>

| # | Name Variations | Actions |
|---|---|---|
| 1. | FAXQUEST | <u>View Source</u> |
| 2. | FAXQUEST INTERNATIONAL LT | <u>View Source</u> |
| 3. | FAXQUEST INTERNATIONAL LTD INC | <u>View Source</u> |
| 4. | GENERAL FAX, INC. | <u>View Source</u> |

## Phone Summary      <u>View Phone Variation Sources</u>

| # | Telephone Number | Actions |
|---|---|---|
| 1. | (215) 405-9100 | <u>View Source</u> |
| 2. | (610) 277-1722 | <u>View Source</u> |

## Addresses      <u>View Address Variation Sources</u>

| # | Address | County | MSA | Actions |
|---|---|---|---|---|
| 1. | 2029 CHANCELLOR ST PHILADELPHIA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 2. | 1811 CHESTNUT ST PHILA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 3. | 1811 CHESTNUT ST 304 PHILADELPHIA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 4. | 2400 MARKET ST 423 PHILADELPHIA, PA 19103 | PHILADELPHIA | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 5. | CONTINENTAL BUSINESS CTR NORRISTOWN, PA 19401 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 6. | CONTINENTAL BUSINESS CENTER CTR BRIDGEPORT, PA 19405 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 7. | CONTINENTAL BUSINESS CTR BRIDGEPORT, PA 19405 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 8. | 55 E FRONT ST BRIDGEPORT, PA 19405 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 9. | CONTINENTAL BUSINESS CTR LAFAYETTE HILL, PA 19444 | MONTGOMERY | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |
| 10. | NORRISTOWN, PA 19487 | CHESTER | Philadelphia, PA-NJ - 6160 | <u>Get Report</u> <u>View Source</u> |

## Executives

| # | Name | Titles | Actions |
|---|---|---|---|
| 1. | MASTERGEORGE, CHRISTOPER | MANAGER | |
| 2. | PASTERNACK, ADAM | CEO, CEO | <u>Get Report</u> |
| 3. | PASTERNECK, ADAM | OWNER | |
| 4. | STEFANO, CHRISTOPHE C | CEO, CEO, CEO, CEO | |

# EXHIBIT 5

Yahoo!   My Yahoo!   Mail   More                    Make Y! My Homepage                    New User? Sign Up   Sign In   Help

# YAHOO!® LOCAL                    [ Search ]                    **WEB SEARCH**

(0 ratings)

## Faxquest International Limited
(215) 405-9100
1811 Chestnut St, Philadelphia, PA 19103 |
Cross Streets: Between S 18th St and S 19th St



## Business Overview    Add info

**Categories:** Fax Services

  Know more details about this business? Click here to share them with your neighbors.

  Be the first on your block – Sign in to write a review of this business.

CATEGORY SPONSORS                    ADVERTISEMENT

Online Fax Service - Myfax.com
**www.myfax.com/no-hidden-fees** – Send & Receive Faxes through Email. Easy & reliable. No hidden fees.

Fax Services - eFax Official Site
**eFax.com/faxingservices** – Try eFax free. Send faxes in 2 minutes by email. Easy faxing anywhere.

Fax Online $7.95/Month
**RapidFAX.com** – Your own Toll Free Fax Number. No Setup Fee. Free One Month Trial.

    See your message here


Sprint

### You Might Also Like

Wilson's Check Cashing
**1201 E Susquehanna Ave, Philadelphia, PA**

Printer's Place
**1310 Walnut St, Philadelphia, PA**

American Banknote Card Services
**102 Commerce Dr, Moorestown, NJ**

Shadeland Pharmacy
**403 Shadeland Ave, Drexel Hill, PA**

### More Search Options

**Search the web for Faxquest International Limited in Philadelphia, PA**

**Reviews of Philadelphia Local Services on Yelp.com**

Philadelphia City Guide > Professional Services > Telecommunications > Fax Services > Faxquest International Limited

Some business information provided by InfoUSA ®, Omaha, Nebraska Copyright © 2008.
Some business information provided by Wcities & Discoverourtown.com. Copyright © 2008. All rights reserved.
Copyright © 2008 Yahoo! Inc. All rights reserved. Copyright/IP Policy
Privacy Policy | Terms of Service | Add/Edit a Business | Yahoo! Maps Terms of Use | Help | Additional Terms of Service

Yahoo!   My Yahoo!   Mail   More          **Make Y! My Homepage**          **New User?** Sign Up    Sign In    Help

 **LOCAL** Yellow Pages          Search          **WEB SEARCH**

 If you suffer from persistent heartburn two or more days a week, despite treatment and diet changes, it could be acid reflux disease. Prescription Prevacid is used for acid reflux disease. Prevacid may not be right for everyone and has a low occurrence of side effects such as diarrhea, abdominal pain and nausea. Symptom relief does not rule out other serious stomach conditions. Please see the complete Prescribing Information and talk to your doctor.

## Yahoo! Yellow Pages

**Your Search:**          Search          **Location:** ★ Philadelphia PA

Search by Category or Business Name (e.g. Hotel or Holiday Inn)          Save Location | Change Location

**Top** > **Other Professional Services** > **Telecommunications** > **Fax Services**

Sort by:   **Name**   **Distance**                                    Showing 1 to 6 of 6

Business Name:                                                        Address:

**Action Fax Inc**                                                    8800 Essington Ave
(215) 937-0838  See reviews on Yahoo! Local                           **Philadelphia, PA** Map

**Antech Services**                                                   4732 N Camac St
(215) 329-5281  See reviews on Yahoo! Local                           **Philadelphia, PA** Map

**Fatima's Fashions**                                                 4050 Lancaster Ave
(215) 222-1715  See reviews on Yahoo! Local                           **Philadelphia, PA** Map

**Faxquest International Ltd**                                         2400 Market St # 423
(215) 405-9100  See reviews on Yahoo! Local                           **Philadelphia, PA** Map

**Printer's Place**                                                   1310 Walnut St
(215) 546-6562  Web Site  See reviews on Yahoo! Local                 **Philadelphia, PA** Map

**Ups Store**                                                         7715 Crittenden St
(215) 242-2800  See reviews on Yahoo! Local                           **Philadelphia, PA** Map

Sort by:  **Name** | **Distance**                                     Showing 1-6 of 6

                                                                      **Beyond Philadelphia**

**Beyond Philadelphia**

## Sponsor Results (What's this?)

Quality Suites Baton Rouge from $105.11 Low Rate Guarantee in Baton Rouge, LA. Plus get up to $100 back.
www.GottaGoTravel.com

Quality Suites Baton Rouge Reservations Guaranteed Low Rates in Baton Rouge, Louisiana Call Toll-free.
www.DiscountHotelWorld.com

Uniquely Louisiana Come experience Baton Rouge's plantations, fine cuisine, history, art.
www.visitbatonrouge.com

Some links and information accompanying the All Businesses listings may be provided by Yahoo! and Yahoo!'s content providers, and are not affiliated with or endorsed by the listers or their listing agents.

### Modify your Search

**SEARCH:**

(by name or category)

| | |
|---|---|
| **Locations:** | ---none selected--- |
| | (Address, Intersection or Airport Code) |

| | | |
|---|---|---|
| **Address:** | | **Tip:** If you specify an address, we |
| | | will search for businesses closest |
| | (Optional) | to that address. |

| | |
|---|---|
| **City, State or Zip:** | Philadelphia PA |

| | |
|---|---|
| **Country:** | United States |

Continue

Business Information provided by InfoUSA ®, Omaha, Nebraska Copyright © 2008.
All Rights Reserved. Use Subject to License.

Driving Directions - Local - Maps - Real Estate - Yellow Pages

Copyright © 2008 Yahoo! Inc. All rights reserved. Help - Copyright/IP Policy - Privacy Policy - Terms of Service

# **EXHIBIT 6**

Click here for Adobe Acrobat version
Click here for Microsoft Word version

```
**********************************************************
                       NOTICE
**********************************************************

This document was converted from Microsoft Word.

Content from the original version of the document such as
headers, footers, footnotes, endnotes, graphics, and page numbers
will not show up in this text version.

All text attributes such as bold, italic, underlining, etc. from the
original document will not show up in this text version.

Features of the original document layout such as
columns, tables, line and letter spacing, pagination, and margins
will not be preserved in the text version.

If you need the complete document, download the
Microsoft Word or Adobe Acrobat version.

**********************************************************
```

FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C. 20554


February 17, 2005


VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

AHP Enterprises, Inc.
aka Fax Quest International, LTD
aka Faxquest International Ltd
aka Slingshot Technologies Corporation
Attn: Adam Harris
1811 Chestnut Street, Suite 304
Philadelphia, PA 19103

            RE: EB-05-TC-020

Dear Mr. Harris:

     This is an official CITATION and LETTER OF INQUIRY1 related
to violations of the Communications Act of 1934, as amended, and
the Federal Communications Commission's rules that govern
telephone solicitations and unsolicited advertisements.2  As
explained below, future violations of the Act or Commission's
rules in this regard may subject you to monetary forfeitures.

     It has come to our attention that you are involved in
transmitting to telephone facsimile machines unsolicited

advertisements for property, goods, or services offered by
another entity (see attachments).3  As explained in detail below,
section 227(b)(1)(C) of the Communications Act and section
64.1200(a)(3) of the Commission's rules generally prohibit the
delivery of unsolicited advertisements to telephone facsimile
machines.

    We direct you to respond to this Citation and Letter of
Inquiry by providing the information and documents specified
below no later than 30 days after the date of this
correspondence.

        I.    CITATION FOR VIOLATIONS OF 47 U.S.C. § 227(b)(1)(C)
              AND 47 C.F.R. § 64.1200(a)(3)

    Section 227(b)(1)(C) of the Communications Act makes it
``unlawful for any person within the United States, or any person
outside the United States if the recipient is within the United
States . . . to use a telephone facsimile machine, computer, or
other device to send an unsolicited advertisement to a telephone
facsimile machine.'' 4   The term ``unsolicited advertisement''
is defined in the Act and the Commission's rules as ``any
material advertising the commercial availability or quality of
any property, goods, or services which is transmitted to any
person without that person's prior express invitation or
permission.''5  Under Commission rules and orders currently in
effect, the Commission considers an established business
relationship between a fax sender and recipient to constitute
prior express invitation or permission to send a
facsimile advertisement.6  Mere distribution or publication of a
fax number, however, does not
 establish consent to receive advertisements by fax.7

    Although entities that merely transmit or `broadcast''
facsimile messages on behalf of others are not generally liable
for compliance with the prohibition on faxing unsolicited
advertisements, the exemption from liability does not exist when
a facsimile broadcaster8 has ``a high degree of involvement in,
or actual notice of, the unlawful activity and fails to take
steps to prevent such facsimile transmissions.''9  Supplying the
telephone facsimile numbers to which messages are sent or
influencing the content of the fax message, among other things,
evidence a high degree of involvement. Therefore, in certain
circumstances, fax broadcasters may be held liable for
unsolicited advertisements that they transmit to telephone
facsimile machines on behalf of other entities. You may be
subject to  monetary forfeitures if, among other things, you: (1)
are highly involved in sending unsolicited facsimile
advertisements on behalf of any party, as evidenced by such
actions as supplying the telephone facsimile numbers to which you
transmit unsolicited advertisements or influencing the content of
fax messages; or (2) continue to transmit facsimile
advertisements for the entity or entities for whom the Company
faxed the advertisements that are attached to this correspondence
without taking steps to ensure that either that entity or your
company has an established business relationship with each
recipient or has otherwise obtained each recipient's permission
to fax advertisements.

    Finally, section 63.318(d) of the Commission's rules
requires that a fax broadcaster with a high degree of involvement
in the messages it transmits include on each message the name
under which it is registered to conduct business with the
relevant State Corporation Commission or comparable regulatory

http://www.fcc.gov/eb/Orders/2005/DA-05-433A1.html

authority.  The attached materials indicate that you have failed
to include this information on the faxes at issue.  This omission
violates the Commission's rules and may subject you to monetary
forfeitures if, in fact, you are highly involved in your
customers' sending of facsimile messages, as evidenced by the
factors outlined above.

        If, after receipt of this citation, you violate the
Communications Act or the Commission's rules in any manner
described herein, the Commission may impose monetary forfeitures
not to exceed $11,000 for each such violation or each day of a
continuing violation. 10

        You may respond to this citation within 30 days from the
date of this letter either through (1) a personal interview at
the Commission's Field Office nearest to your place of business,
or (2) a written statement.  Your response should specify the
actions that you are taking to ensure that you do not violate the
Commission's rules governing telephone solicitation and
unsolicited advertisements, as described above.

        The nearest Commission field office appears to be the
Philadelphia Office in Philadelphia, Pennsylvania.  Please call
Al McCloud at (202) 418-2499 if you wish to schedule a personal
interview.  You should schedule any interview to take place
within 30 days of the date of this letter.  You should include
any written statement with your answers to the inquiries set
forth in section II of this correspondence.

        Reasonable accommodations for people with disabilities are
available upon request.  Include a description of the
accommodation you will need including as much detail as you can.
Also include a way we can contact you if we need more
information.  Please allow at least 5 days advance notice; last
minute requests will be accepted, but may be impossible to fill.
Send an e-mail to fcc504@fcc.gov or call the Consumer &
Governmental Affairs Bureau:

        For sign language interpreters, CART, and other
reasonable accommodations:
        202-418-0530 (voice), 202-418-0432 (tty);

        For accessible format materials (braille, large print,
electronic files, and audio
        format): 202-418-0531 (voice), 202-418-7365 (tty).

        II.   INQUIRY REGARDING FAX BROADCASTING ACTIVITIES

        We direct your Company, pursuant to sections 4(i), 4(j), and
403 of the Act, 47 U.S.C. §§ 154(i), 154(j), 403, to provide the
information and Documents, where relevant, specified herein
within 30 calendar days from the date of this letter.

Instructions

        If the Company requests that any information or Documents,
as defined herein, responsive to this letter be treated in a
confidential manner, it shall submit, along with all responsive
information and Documents, as defined herein, a statement in
accordance with Section 0.459 of the Commission's rules.  47
C.F.R. § 0.459.  Requests for confidential treatment must comply
with the requirements of Section 0.459, including the standards
of specificity mandated by Section 0.459(b).  Accordingly,

``blanket'' requests for confidentiality of a large set of documents are unacceptable. Pursuant with Section 0.459(c), the Bureau will not consider requests that do not comply with the requirements of Section 0.459.

If the Company withholds any information or Documents under claim of privilege, it shall submit, together with any claim of privilege, a schedule of the items withheld that states, individually as to each such item, the numbered inquiry to which each item responds and the type, title, specific subject matter, and date of the item; the names, addresses, positions, and organizations of all authors and recipients of the item; and the specific ground(s) for claiming that the item is privileged.

Each requested Document not subject to a claim of privilege shall be submitted in its entirety, even if only a portion of that Document is responsive to an inquiry made herein. This means that the Document shall not be edited, cut, or expunged, and shall include all appendices, tables, or other attachments, and all other Documents referred to in the Document or attachments. All written materials necessary to understand any Document responsive to these inquiries must also be submitted.

If a Document responsive to any inquiry made herein existed but is no longer available, or if the Company is unable for any reason to produce a Document responsive to any inquiry, identify each such Document by author, recipient, date, title, and specific subject matter, and explain fully why the Document is no longer available or why the Company is otherwise unable to produce it.

With respect only to Documents responsive to the specific inquiries made herein and any other Documents relevant to those inquiries , the Company is directed to retain the originals of those Documents for twenty-four (24) months from the date of this letter unless (1) the Company is directed or informed by the Enforcement Bureau in writing to retain such Documents  for some other period of time or (2) the Enforcement Bureau and/or the Commission releases any item on the subject of this investigation, including, but not limited to, a Notice of Apparent Liability for Forfeiture or an order disposing of the issues in the investigation, in which case, the Company must retain all such Documents until the matter has been finally concluded by payment of any monetary penalty, satisfaction of all conditions, expiration of all possible appeals, conclusion of any collection action brought by the United States Department of Justice or execution and implementation of a final settlement with the Commission or the Enforcement Bureau.

The specific inquiries made herein are continuing in nature. The Company is required to produce in the future any and all Documents and information that are responsive to the inquiries made herein but not initially produced at the time, date and place specified herein. In this regard, the Company must supplement its responses (a) if the Company learns that, in some material respect, the Documents and information initially disclosed were incomplete or incorrect or (b) if additional responsive Documents or information are acquired by or become known to the Company after the initial production. The requirement to update the record will continue for twenty-four (24) months from the date of this letter unless (1) the Company is directed or informed by the Enforcement Bureau in writing that the Company's obligation to update the record will continue for

http://www.fcc.gov/eb/Orders/2005/DA-05-433A1.html

some other period of time or (2) the Enforcement Bureau and/or
the Commission releases an item on the subject of this
investigation, including, but not limited to, a Notice of
Apparent Liability for Forfeiture or an order disposing of the
issues in the investigation, in which case the obligation to
update the record will continue until the release of such item.

For each Document or statement submitted in response to the
inquiries below, indicate, by number, to which inquiry it is
responsive and identify the person(s) from whose files the
Document was retrieved.  If any Document is not dated, state the
date on which it was prepared.  If any Document does not identify
its author(s) or recipient(s), state, if known, the name(s) of
the author(s) or recipient(s).  The Company must identify with
reasonable specificity all Documents provided in response to
these inquiries.

Unless otherwise indicated, the period of time covered by
these inquiries begins one year before the date of this letter
and ends with the date of the Company's response.


Definitions

For purposes of this letter, the following definitions
apply:

"Any" shall be construed to include the word "all," and the
word "all" shall be construed to include the word "any."
Additionally, the word "or" shall be construed to include the
word "and," and the word "and" shall be construed to include the
word "or."  The word "each" shall be construed to include the
word "every," and the word "every" shall be construed to include
the word "each."

"Document" shall mean the complete original (or in lieu
thereof, exact copies of the original) and any non-identical copy
(whether different from the original because of notations on the
copy or otherwise), regardless of origin or location, of any
taped, recorded, transcribed, written, typed, printed, filmed,
punched, computer-stored, or graphic matter of every type and
description, however and by whomever prepared, produced,
disseminated, or made, including but not limited to any
advertisement, book, pamphlet, periodical, contract,
correspondence, letter, facsimile, e-mail, file, invoice,
memorandum, note, telegram, report, record, handwritten note,
working paper, routing slip, chart, graph, photograph, paper,
index, map, tabulation, manual, guide, outline, script, abstract,
history, calendar, diary, agenda, minute, marketing plan,
research paper, preliminary drafts, or versions of all of the
above, and computer material (print-outs, cards, magnetic or
electronic tapes, disks and such codes or instructions as will
transform such computer materials into easily understandable
form).

``Company'' shall include the Company as noted on page 1 of
this letter, and any predecessor-in-interest,
successor?in?interest, affiliate, parent company, any wholly or
partially owned subsidiary, or other affiliated company(s) or
business(es), and all owners, including but not limited to,
partners or principals, and all directors, officers, employees,
or agents, including consultants and any other persons working

for or on behalf of the foregoing at any time during the period
covered by this letter.

Information to be provided

1.    Discuss in detail the Company's involvement in
transmitting to telephone facsimile machines the
advertisements that are attached to this correspondence and
identify, including name(s), business telephone
number(s),and address(es) of, the entity or entities for
which the Company transmitted such advertisements.  Discuss
any other services that the Company provides to the entity
or entities whose property, goods, or services are promoted
in the attached advertisements.  Provide all relevant
documents, including any contracts, agreements, or any other
materials that address or memorialize the terms and
conditions under which the Company transmits telephone
facsimile messages for, or provides any other services to,
the entity or entities whose property, goods, or services
are promoted in the attached advertisements.

2.    Has the Company disclosed to the entity or entities
whose property, goods, or services are promoted in the
attached advertisements, or any other entities for which it
transmits telephone facsimile messages, that sending
unsolicited advertisements to telephone facsimile machines
is unlawful?  Provide all relevant documents.

3.    Has the Company had any control over or involvement in
influencing the content of the attached advertisements or
any other advertisements that the Company transmits by
facsimile?  Does the Company offer any type of editing or
graphic design services for advertisements that it transmits
by facsimile?  Describe all such control, involvement, or
services in detail. Provide all relevant documents.

4.    Who provided, compiled, or generated the distribution
list(s) of telephone facsimile numbers used to transmit the
attached advertisements or any other advertisements that the
Company transmits by facsimile?  Provide all relevant
documents.

5.    If the Company has been involved in any way in
providing, compiling, generating, or editing the
distribution list(s) of telephone facsimile numbers used to
transmit the attached advertisements or any other
advertisements that the Company transmits by facsimile,
describe in detail the process by which the Company obtains,
produces, or participates in the generation of such list(s).
Does the Company employ or compensate any individuals or
entities outside the Company for any service, activity,
assistance, or facilities used in connection with providing,
compiling, generating, or editing of such list(s)?  Describe
such arrangements in detail.  Provide all relevant
documents.

6.    If the Company has been involved in any way in
providing, compiling, generating, or editing the
distribution list(s) of telephone facsimile numbers used to
transmit the attached advertisements or any other
advertisements that the Company transmits by facsimile, what
steps has the Company taken to ensure that the telephone
facsimile numbers belong to individuals or entities who have

agreed, by explicit consent or by virtue of an established
business relationship, to receive the advertisement(s)?
Describe in detail the manner in which the Company records
consumers' consent or the existence of an established
business relationship.  Provide all relevant documents.

7.    Does the Company advertise facsimile transmittal
services or any other services associated with facsimile
advertisements, and, if so, by what means?  Provide copies
of all print, audio, and video materials that have been used
within the past year to promote such services.  For each
advertisement, list the media in which the advertisement
appeared and the date(s) of such appearance(s).

We direct the Company to support its responses with an
affidavit or declaration under penalty of perjury, signed and
dated by an authorized officer of the Company with personal
knowledge of the representations provided in the Company's
response, verifying the truth and accuracy of the information
therein and that all of the Documents and information requested
by this letter which are in the Company's possession, custody,
control or knowledge have been produced.  If multiple Company
employees contribute to the response, in addition to such general
affidavit or declaration of the authorized officer of the Company
noted above, provide separate affidavits or declarations of each
such individual that identify clearly to which responses the
affiant or declarant is attesting.  All such declarations
provided should comply with section 1.16 of the Commission's
rules, 47 C.F.R. § 1.16, and be substantially in the form set
forth therein.

The Company should direct its response to the attention of

                Kurt A. Schroeder
                Deputy Chief
                Telecommunications Consumers Division
                Enforcement Bureau
                Federal Communications Commission
                445 12th Street, S.W., Rm. 4-C222
                Washington, DC, 20554.

Include the file number, EB-05-TC-020, in any
correspondence.

Under the Privacy Act of 1974, 5 U.S.C. § 552(a)(e)(3), we
are informing you that the Commission's staff will use all
relevant material information before it to determine what, if
any, enforcement action is required to ensure your compliance
with the TCPA and the Commission's rules.  This will include any
information that you disclose in your interview or written
statement in response to the Citation and Letter of Inquiry.

The knowing and willful making of any false statement, or
the concealment of any material fact, in reply to this Citation
and Letter of Inquiry is punishable by fine or imprisonment under
18 U.S.C. § 1001.

Thank you in advance for your anticipated cooperation.

                    Sincerely,

http://www.fcc.gov/eb/Orders/2005/DA-05-433A1.html

Kurt A. Schroeder
Deputy Chief, Telecommunications
Consumers Division
Enforcement Bureau
Federal Communications Commission

Enclosures

---

1These actions are taken pursuant to 47 U.S.C. §§ 154(i), 403, 503(b)(5).

2 47 U.S.C. § 227; 47 C.F.R. § 64.1200.  A copy of these provisions is enclosed for your convenience.  Section 227 was added to the Communications Act by the Telephone Consumer Protection Act of 1991 and is most commonly known as the TCPA. The TCPA and the Commission's parallel rules restrict a variety of practices that are associated with telephone solicitation and use of the telephone network to deliver unsolicited advertisements, including fax advertising.

3 The facsimile advertisement(s) promotes Roofing and Waterproofing services on behalf of  NY Industrial Roofing & Waterproofing, Inc. unidentified entity and Snip Link, LLC on behalf of Snip Link, LLC, Pennsauken, New Jersey.  According to common carrier billing information, your company holds the opt-out number provided on the advertisements.  An unidentified fax number of the unidentified entity and Snip Link, LLC holds the contact number contained in the advertisements.

4 47 U.S.C. § 227(b)(1)(C); see also 47 C.F.R. § 64.1200(a)(3) (providing that no person or entity may . . . use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine). Both the TCPA and the Commission's rules define ``telephone facsimile machine'' as ``equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.'' 47 U.S.C. § 227(a)(2); 47 C.F.R. § 64.1200(f)(8).  The Commission has stated that ``[t]he TCPA's definition of `telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images.''  Thus, ``faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. . . [although] the prohibition does not extend to facsimile messages sent as email over the Internet.'' Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (2003 TCPA Report and Order).

5 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(10).

6 Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12405 (1995) (1995 TCPA Reconsideration Order).  In June 2003, the Commission amended its rules to specify that prior express invitation or permission to receive a facsimile advertisement must be recorded in a ``signed written statement that includes the facsimile number to which any advertisements may be sent and clearly indicates the recipient's consent to

http://www.fcc.gov/eb/Orders/2005/DA-05-433A1.html

receive such facsimile advertisements from the sender.'' 2003 TCPA Report and Order, 18 FCC Rcd at 14124-28 (adopting new section 64.1200(a)(3)(i). This new provision, which supercedes the established business relationship exception, is scheduled to take effect June 30, 2005. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Order, FCC 04-223 (rel. Oct.1, 2004). The Commission currently is considering petitions that seek to retain the established business relationship exception or require methods other than a signed written statement to demonstrate prior express consent to receive fax advertising.

71995 Reconsideration Order, 10 FCC Rcd at 12408-09; see also 2003 TCPA Report and Order, 18 FCC Rcd at 14128 (concluding that publication of a fax number in a trade publication or directory does not demonstrate consent to receive fax advertising).

8 The term ``facsimile broadcaster'' means ``a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee.'' 47 C.F.R. § 64.1200(f)(4).

9 47 C.F.R. § 64.1200(a)(3)(ii). Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Order on Reconsideration, 18 FCC Rcd 16972 (2003).

10 See 47 C.F.R. § 1.80(b)(3).

# EXHIBIT 7

1

2

3    Peter Strojnik, 6464
     3030 North Central Avenue, Suite 1401
4    Phoenix, Arizona 85012
     Telephone: 602-524-6602
5    Facsimile: 602-296-0135
6    e-mail: *Strojnik@aol.com*
     Attorney for Plaintiff
7

8              **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE DISTRICT OF ARIZONA**

10

11                                    ) NO. NO. 2:08-cv-1017 PHX ROS
                                      )
12   PETER STROJNIK, P.C., an Arizona ) ~~FIRST~~ **[PROPOSED] SECONDAMENDED**
     Corporation,                     )    **CLASS ACTION COMPLAINT (AS OF**
13                                    )   **RIGHT) FOR INJUNCTIVE RELIEF AND**
                           Plaintiff, )      **FOR DAMAGES ARISING OUT OF**
14                                    )       **TRANSMISSION OF UNSOLICITED**
15        vs.                         )       **FAXES - 47 U.S.C. § 227 AND**
                                      )
16   THE ENERGY BULL, a fictitiously  )   **FOR DECLARATORY JUDGMENT; AND**
     named defendant whose true legal identity )
17   is not known by Plaintiff; ~~HYBRID~~ )      ~~**FOR CIVIL CONSPIRACY; AND**~~
     ~~TECHNOLOGIES, INC., a Nevada~~ )
18   ~~Corporation; SUPERLATTICE POWER,~~ )        ~~**FOR AIDING AND ABETTING**~~
     ~~INC. a Nevada Corporation;~~      )
19   DIGITALSPEED COMMUNICATIONS, )         **REQUEST FOR TRIAL BY JURY**
     INC., a Pennsylvania Corporation; ADAM )
20   HARRIS PASTERNACK a/k/a ADAM )
     HARRIS, an individual; ALLA      )
21   PASTERNACK, an individual; ABC   )
     DEFENDANTS 1-50                  )
22                                    )
                           Defendants. )
23   _____)

24             **THE PARTIES, JURISDICTION AND VENUE**

25

                                    -1-

1) Plaintiff is an Arizona Professional Corporation authorized to and conducting business in Maricopa County, State of Arizona.

2) Defendant The Energy Bull is a fictitious entity whose name appears on the unsolicited faxes, Exhibits 1 and 2, manipulating the publicly traded stocks of Defendants Hybrid Technologies, Inc. ("Hybrid") and Superlattice Power, Inc. ("Superlattice") respectively.

3) ~~Defendant Hybrid is a Nevada corporation. Its stock trades publicly in the over the counter securities market in the United States under the symbol OTC BB: HYBR.OB ("HYBR").~~

4) ~~Defendant Superlattice is also a Nevada Corporation. Its stock trades publicly in the over the counter securities market in the United States under the symbol OTC BB: SLAT.OB ("SLAT")~~

5) Defendant Digitalspeed Communications, Inc. is a Pennsylvania Corporation ("Digitalspeed").

6) Defendant Adam Harris Pasternack a/k/a Adam Harris ("Pasternack") is an individual residing in the Commonwealth of Pennsylvania.

7) Defendant Alla Pasternack ("Mrs. Pasternack") is an individual residing in the Commonwealth of Pennsylvania and is the wife of Pasternack.

8) Unknown Defendants 1-50 are the persons and/or entities who conspired with and aided and abetted the named defendants to illegally manipulate HYBR and SLAT stock by issuing unsolicited faxes to Plaintiff and the members of the Class.

9) This Court has personal jurisdiction over Defendants by virtue of the following facts:

   a) Defendants caused at least one unsolicited fax to be sent to at least one recipient in the State of Arizona; and

b) The State of Arizona has interest in providing a forum for its residents, including the Plaintiff and the Class identified herein; and

c) It would be extremely burdensome for Plaintiff to access another forum; and

d) Upon information and belief, Defendants continuously and systematically sent unsolicited faxes to the State of Arizona; and

e) Defendants purposefully availed themselves of economic benefits and resources of the State of Arizona in conducting their business here; and

f) Defendants may be hailed in court here under the liberal "effects" test in this tort action; and

g) Defendants did and should have foreseen being hailed to Court in the State of Arizona.

10) This Court has original jurisdiction over this matter by virtue of the Class Action Fairness Act, 28 U.S.C. § 1332(d) requiring minimum diversity and the amount in controversy exceeding 5 million dollars. Actual diversity exists between Plaintiff and Defendants.

11) The venue is proper in this Court pursuant to 28 U.S.C. §§1391 *et seq.*

## **FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

12) Plaintiff realleges all allegations heretofore set forth.

13) ~~Defendants Hybrid and Superlattice are closely related entities. Defendants Hybrid and Superlattice~~

~~a)  share officers (Holly Roseberry, Mehboob Charania) directors (Holly Roseberry),~~

~~b)  share location (158 Rolling Hills Rd. Mooresville, NC 28117),~~

~~c)  share license agreement (lithium battery technology),~~

~~d)  rely on the sales of shares of stock for continued operations,~~

1      e) ~~share the method of pumping their respective stock through the use of similar unsolicited~~

2      ~~faxes.~~

3   14) ~~The auditors of Hybrid and Superlattice both opine that Hybrid's and Superlattice's~~

4      ~~continued continuation as a going concern is in doubt.~~

5

6   15) ~~Superlattice is Hybrid's former wholly owned subsidiary.~~

7   16) ~~Superlattice and Hybrid have agreed that Superlattice would invest a "minimum of~~

8      ~~$1,500,000 in each of the next two years in development of the technology for the [lithium~~

9      ~~battery technology]", although both companies know that Superlattice's "continuation as a~~

10     ~~going concern is dependent upon continued financial support from [its] shareholders and~~

11     ~~other related parties".~~

12

13  17) ~~On or about May 20, 2008, Defendants~~ Hybrid sent an unsolicited fax to Plaintiff and the

14     ~~members of the Class, Exhibit 1, in violation of TCPA ("Unsolicited Fax").    The~~

15     ~~Unsolicited Fax on its face states that the sender was paid the sum of $20,000.00 for~~

16     ~~sending out the Unsolicited Faxes.  Upon information and belief, the cost for each fax is~~

17     ~~between 1 and 3 cents for each fax.  This means that Defendants sent out between 666,667~~

18     ~~and 2,000,000 Unsolicited Faxes.  Pursuant to the TCPA, Hybrid is liable in statutory~~

19     ~~damages the sum of $500 to $1,500 for each Unsolicited Fax, for the total of between 333~~

20     ~~million and 3 billion dollars.~~

21

22  18) ~~On or about June 4, 2008, Defendant Superlattice sent an unsolicited fax to Plaintiff and the~~

23     ~~members of the Class, Exhibit 2, in violation of TCPA ("Unsolicited Fax").    The~~

24     ~~Unsolicited Fax on its face states that the sender was paid the sum of $20,000.00 for~~

25     ~~sending out the Unsolicited Faxes.  Upon information and belief, the cost for each fax is~~

-4-

~~between 1 and 3 cents for each fax. This means that Defendants sent out between 666,667~~ ~~and 2,000,000 Unsolicited Faxes. Pursuant to the TCPA, Superlattice is liable in statutory~~ ~~damages the sum of $500 to $1,500 for each Unsolicited Fax, for the total of between 333~~ ~~million and 3 billion dollars.~~

19) On or about May 20, 2008, Defendants sent an unsolicited fax to Plaintiff and the members of the Class (Exhibit 1), in violation of the TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000 for sending out the Unsolicited Fax. On information, the cost for each fax is between 1 and 3 cents. This means that Defendants sent out between 666,667 and 2 million Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages for the sum of $500 and $1,500 for each copy of the Unsolicited Fax broadcasted, for the total of between $333 million and $3 billion.

20) On or about June 4, 2008, Defendants sent an unsolicited fax to Plaintiff and the members of the Class (Exhibit 1), in violation of the TCPA ("Unsolicited Fax"). The Unsolicited Fax on its face states that the sender was paid the sum of $20,000 for sending out the Unsolicited Fax. On information, the cost for each fax is between 1 and 3 cents. This means that Defendants sent out between 666,667 and 2 million Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages for the sum of $500 and $1,500 for each copy of the Unsolicited Fax broadcasted, for the total of between $333 million and $3 billion.

21) The purpose of the Unsolicited Faxes was to manipulate HYBR and SLAT stocks in the securities market.

22) The House Report on the Securities Exchange Act, H.R. Rep. No. 1383, 73d Cong., 2d

Sess., pp. 10, 11 (1934) gives evidence of Congress' concern regarding the manipulation of

the securities market:

> "To insure to the multitude of investors the maintenance of fair and honest
> markets, manipulative practices of all kinds on national exchanges are banned.
> The bill seeks to give investors markets where prices may be established by the
> free and honest balancing of investment demand with investment supply."
> ***
> "The idea of a free and open public market is built upon the theory that competing
> judgments of buyers and sellers as to the fair price of the security brings about a
> situation where the market price reflects as nearly as possible a just price."

23) Senate Report No. 1455, 73d Cong., 2d Sess., p. 81 (1934), similarly states:

> "The purpose of the Act is . . . to purge the securities exchanges of those practices
> which have prevented them from fulfilling their primary function of furnishing
> open markets for securities where supply and demand may freely meet at prices
> uninfluenced by manipulation or control."

24) The broadcasting of the Unsolicited Faxes, Exhibits 1 and 2, manipulated HYBR and SLAT

stock.

25) Hybrid and Superlattice were aware of the market manipulation of their stock.

  a) Hybrid's website shows that Hybrid and Hybrid's officers, directors and insiders are

  aware of the market manipulation of HYBR stock:

**Unauthorized Fax Disclaimer**

It has come to our attention that unsolicited faxes concerning Hybrid are being sent out
by Alternative Energy Advisor, The Energy Bull, and other companies. Management
strongly recommends that you disregard these communications from Alternative Energy
Advisor, The Energy Bull or any other purported companies; Hybrid has not authorized
and does not condone them. Management is attempting to locate Alternative Energy
Advisor and The Energy Bull to request them to cease and desist from sending any
communications of any type whatsoever concerning Hybrid.

b) Superlattice's website shows that Superlattice and Superlattice's officers, directors and insiders are also aware of the market manipulation of SLAT stock:

**Unauthorized Fax Disclaimer**

It has come to our attention that unsolicited faxes concerning Superlattice are being sent out by Alternative Energy Advisor, The Energy Bull, and other companies. Management strongly recommends that you disregard these communications from Alternative Energy Advisor, The Energy Bull or any other purported companies; Superlattice has not authorized and does not condone them. Management is attempting to locate Alternative Energy Advisor and The Energy Bull to request them to cease and desist from sending any communications of any type whatsoever concerning Superlattice.

26) Defendants, their co-conspirators, aiders and abettors, caused to be transmitted the Unsolicited Faxes in order to manipulate the HYBR and SLAT stock as to both value and volume.

27) Hybrid and Superlattice took advantage of the market manipulation.

28) Hybrid and Hybrid's officers, directors and insiders who were aware of the market manipulation and those who took advantage of it, had a duty to disclose the market manipulation to the securities market.

29) Superlattice and Superlattice's officers, directors and insiders who were aware of the market manipulation and those who took advantage of it, had a duty to disclose the market manipulation to the public.

30) Plaintiff has identified two classes of stock manipulators who benefit by the illegal stock manipulation through Unsolicited Fax broadcasts in issue here:

a) The Company whose stock is being promoted by the Unsolicited Fax. In the matter at hand, this class of beneficiaries consists of Hybrid and Superlattice; and/or

1    b) The insiders and or shareholders of the company whose stock is being promoted by the

2        Unsolicited Fax. In the matter at hand, this class of beneficiaries consists of Hybrid's

3        and Superlattice's insiders, officers, directors and/or shareholders.

4    31) Upon information and belief, Hybrid, Hybrid's officers, directors and insiders and

5        Superlattice and Superlattice's officers, directors and insiders provided advice and

6        encouragement with respect to the transmission of the Unsolicited Faxes.

7

8    32) Upon information and belief, Hybrid and Hybrid's officers, directors and insiders and

9        Superlattice and Superlattice's officers, directors and insiders assisted and/or participated

10       with respect to the transmission of the Unsolicited Faxes.

11

12   33) Defendants' market manipulation scheme was not disclosed to the investors and the

13       potential investors through a disclosure form 8-K or otherwise.

14   34) On information, Digitalspeed was the sender of the Unsolicited Faxes.

15   35) The removal numbers on the Faxes have been issued to Digitalspeed.

16   36) Pasternack is the sole owner and President of Digitalspeed and has been the sole owner and

17       President of Digitalspeed since its incorporation in 2003.

18

19   37) Pasternack has been cited by the Federal Communications Commission in the past for the

20       broadcasting of unsolicited facsimiles, to wit: FCC Complaint Number EB-05-TC-020.

21   38) Pasternack was cited by the FCC in 2005 when he was the sole owner and President of

22       Digitalspeed.

23   39) Digitalspeed is the alter ego of Pasternack.

24
25   40) On information, Pasternack was the sender of the Unsolicited Faxes.

### CLASS ACTION ALLEGATIONS

−8−

41) Plaintiff realleges all allegations heretofore set forth.

42) This is a proposed class action suit brought on behalf of Plaintiff and on behalf of other persons and entities who received an unsolicited fax advertisement to their telephone facsimile machine by Defendants.

43) Plaintiff claims and alleges that Defendants' use of the telephone facsimile machine, computer, or other device to send an unsolicited facsimile advertisement to a telephone facsimile line violates the TCPA. This cause of action is specifically authorized pursuant to Arizona Revised Statutes § 44-1482(C).

44) Plaintiff brings this action in Plaintiff's individual capacity as well as on behalf of a class of persons and entities similarly situated (the "Class").

45) Plaintiff operates a law business located in Phoenix, Maricopa County, State of Arizona, and receives and has received unsolicited faxes that cause it damages due to the loss of its paper and toner, the temporary loss of use of its facsimile machine and computer, the potential loss of business, and a violation of its right to privacy.

46) As a direct and proximate result of Defendant's conduct, Plaintiff and the members of the Class suffered damages due to the loss of paper and toner, the temporary loss of use of their facsimile machine and the potential loss of business while their facsimile machines were receiving the Unsolicited Fax.

47) This Class Action is brought and may be maintained pursuant to Rule 23, Federal Rules of Civil Procedure. Plaintiff seeks to represent a Class comprised of:

> All persons who received an unsolicited advertisement promoting
> Hybrid Technologies, Inc. or Superlattice Power, Inc. stock via

unsolicited facsimiles <u>containing the toll-free removal number 1-877-885-5720 or 1-877-283-0446</u>

48) This action is properly brought as a class action pursuant to Rule 23, F.R.C.P., for the following reasons:

a) The Hybrid Unsolicited Fax, Exhibit 1, states on its face that the marketing firm sending out the fax was paid the sum of $20,000.00 for its service. Upon information and belief, a fax distribution firm sends out a fax at a cost of between 1 and 3 cents per fax. This means that Defendants sent out between 666,667 and 2,000,000 Unsolicited Faxes.

b) The Superlattice Unsolicited Fax, Exhibit 2, states on its face that the marketing firm sending out the fax was paid the sum of $20,000.00 for its service. Upon information and belief, a fax distribution firm sends out a fax at a cost of between 1 and 3 cents per fax. This means that Defendants sent out between 666,667 and 2,000,000 Unsolicited Faxes.

c) The class is so numerous that joinder of all members is impracticable; and

d) There are questions of law or fact common to the class, to wit:

i) Whether Defendants violate the TCPA when sending the Unsolicited Faxes, Exhibits 1 and 2; and

ii) Whether the facsimiles that are the same or similar to Unsolicited Faxes constitute "unsolicited advertisements" under TCPA; and

iii) Whether Plaintiff and the members of the Class are entitled to damages under the TCPA; and

iv) Whether Plaintiff and the members of the Class are entitled to treble damages under the TCPA; and

v) Whether Plaintiff and the members of the Class are entitled to injunctive relief under the TCPA; and

vi) Whether Plaintiff and the members of the Class are entitled to declaratory relief.

e) The claims or defenses of the representative parties are typical of the claims or defenses of the Class because all members of the Class received the same Unsolicited Fax; and

f) The named Plaintiff will fairly and adequately protect the interests of the class because:

i) Plaintiff seeks no relief that is antagonistic to the other members of the Class; and

ii) Plaintiff has no established business relationship with any Defendant or any potential additional Defendant; and

iii) Plaintiff shall vigorously pursue the claims of the Class; and

iv) Plaintiff has retained counsel with 28 years of experience in litigation matters and competent in representing the interests of the Class; and

v) Plaintiff's counsel has expended significant efforts in this matter and is learned in tracking down the sources of Unsolicited Faxes.

g) A Rule 23 Class Action is superior to any other available means for the adjudication of this controversy in the following particulars:

i) This action will cause an orderly and expeditious administration of the Class's claims; and

ii) The economies of time, effort and expense will be fostered; and

iii) Uniformity of decisions will be ensured at the lowest costs and with the least expenditures of judicial resources.

h) Because of the size of the Class, the expense and burden of individual litigation makes it impractical for the individual members of the Class to individually seek redress for the wrongs done to them. Plaintiff believes that the members of the Class, to the extent they are aware of their rights against Defendants, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages warranted and/or the value of individual injunctive relief. Hence, a class action is the only feasible means of recovery for the members of the Class. Furthermore, without a class action, the members of the Class will continue to suffer damages and Defendants will continue to violate federal law, retaining and reaping the proceeds of their wrongful marketing practices.

i) Plaintiff does not anticipate any difficulty in management of this action because the evidence proving Defendants' violations of the TCPA is ascertainable through discovery. The identities of the members of the Class are known to Defendants, and damages can be calculated from Defendants' records. This action poses no unusual difficulties that would impede its management by the Court as a Class action.

**COUNT ONE**
(Violation of the Telephone Consumer Protection Act <u>against All Defendants</u>)
(47 U.S.C. § 227 *et seq*)

49) Plaintiff realleges all allegations heretofore set forth.

50) Defendants violated the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227 *et seq.* case ("TCPA") by broadcasting the Unsolicited Faxes to Plaintiff and the Class.

51) Defendants and/or their agents used a telephone facsimile machine, computer, or other device to send unsolicited advertisements to telephone facsimile machines to Plaintiff and the members of the Class.

52) On information and belief, in each instance Defendants transmitted or caused to be transmitted unsolicited faxes to telephone machines themselves, or had a high degree of involvement in the transmission of the unsolicited faxes to telephone facsimile machines. For example:

a)  Defendants knew that the transmitted faxes were advertisements;

b)  Defendants participated in the preparation of their content;

c)  Defendants provided or obtained the fax telephone numbers of Plaintiff and the members of the Class;

d)  Defendants and members of the Class have no established business relationship;

e)  Defendants compensated a third party for transmitting the unsolicited faxes to telephone facsimile machines; and/or

f)  Defendants knew that Plaintiff and the members of the Class had not authorized the faxes' transmission by prior express invitation or permission.

53) As a direct and proximate result of said conduct, Plaintiff and members of the Class have sustained damages. Under the TCPA, Plaintiff and each member of the Class are entitled to

-13-

injunctive and declaratory relief enjoining Defendant's unlawful conduct, as well as incidental statutory damages.

54) As a result of said conduct, Plaintiff and members of the Class suffered property damage, and Defendant has invaded their privacy.

## COUNT TWO
### (Declaratory Judgment <u>against All Defendants</u>)

55) Plaintiff realleges all allegations heretofore set forth.

56) This count is brought pursuant to the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. § 13-1821 *et seq* and the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.*

57) A justiciable controversy exists between Plaintiff and the members of the Class and Defendants regarding the legality of Defendants' unsolicited fax transmissions.

58) Defendants claim, or may claim, that their conduct in sending unsolicited fax transmissions does not violate the TCPA.

59) Defendants claim, or may claim, that they obtained express invitation or consent to send the faxes to Plaintiff and the members of the Class.

60) Defendants claim, or may claim, that they enjoyed an established business relationship with Plaintiff and the members of the Class.

61) Plaintiff claims that Defendants' practices violate the TCPA.

## ~~COUNT THREE~~
### ~~(Civil Conspiracy – Hybrid)~~

~~62) Plaintiff realleges all allegations heretofore set forth.~~

~~63) Hybrid and/or Hybrid's officers, directors, insiders and/or stockholders:~~

-14-

a) ~~Were aware of the market manipulation of the HYBR stock through the Unsolicited Fax.~~

b) ~~Took advantage of the market manipulation through the Unsolicited Fax.~~

c) ~~Assisted in the market manipulation of the HYBR stock by:~~

   i) ~~Failing to disclose the market manipulation of the HYBR stock through Unsolicited Faxes;~~

   ii) ~~Other assistance to be discovered through further investigation and the discovery process.~~

64) ~~Hybrid and/or Hybrid's insiders, officers, directors and/or shareholders tacitly approved the market manipulation of HYBR stock, including the broadcast of the Unsolicited Faxes.~~

65) ~~Conspirators expressly or tacitly agreed to illegally transmit Unsolicited Faxes to manipulate the HYBR stock; they agreed to accomplish an unlawful purpose by unlawful means, causing damages to Plaintiff and the members of the Class.~~

66) ~~Plaintiff and the members of the Class have been damaged by acts committed by the Defendants pursuant to the civil conspiracy described above.~~

67) ~~Conspirators' conduct was intentional and premeditated, intended to unjustly benefit Hybrid and/or Hybrid's insiders, officers, directors and/or shareholders at the expense of the Plaintiff and the members of the Class, entitling Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Conspirators and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.~~

68) ~~Plaintiff has been damaged by Defendants by acts committed by the Defendants pursuant to the civil conspiracy described above.~~

1

2

~~**COUNT FOUR**~~
~~(Civil Conspiracy – Superlattice)~~

3

~~69)Plaintiff realleges all allegations heretofore set forth.~~

4

~~70)Superlattice and/or Superlattice's officers, directors, insiders and stockholders:~~

5

~~a) Were aware of the market manipulation of its stock through the Unsolicited Faxes.~~

6

~~b) Took advantage of the market manipulation through the Unsolicited Fax.~~

7

~~c) Assisted in the market manipulation of the SLAT stock by:~~

8

9

~~i) Failing to disclose the market manipulation of the SLAT stock through Unsolicited~~

10

~~Faxes;~~

11

~~ii) Other assistance to be discovered through further investigation and the discovery~~

12

~~process.~~

13

~~71)Superlattice and/or Superlattice's insiders, officers, directors and/or shareholders tacitly~~

14

15

~~approved the market manipulation of SLAT stock, including the broadcast of the~~

16

~~Unsolicited Fax.~~

17

~~72)Conspirators expressly or tacitly agreed to illegally transmit Unsolicited Faxes to~~

18

~~manipulate the SLAT stock; they agreed to accomplish an unlawful purpose by unlawful~~

19

~~means, causing damages to Plaintiff and the members of the Class.~~

20

~~73)Plaintiff and the members of the Class have been damaged by acts committed by the~~

21

22

~~Defendants pursuant to the civil conspiracy described above.~~

23

~~74)Conspirators' conduct was intentional and premeditated, intended to unjustly benefit~~

24

~~Superlattice and/or Superlattice's insiders, officers, directors and/or shareholders at the~~

25

~~expense of the Plaintiff and the members of the Class, entitling Plaintiff and the members of~~

1    the Class to punitive damages in an amount sufficient to deter these Conspirators and others

2    similarly situated from repeating or committing the wrongful acts complained of herein, but

3    in no event less than $5,000,000.00 each.

4
5    75) Plaintiff has been damaged by Defendants by acts committed by the Defendants pursuant to

6    the civil conspiracy described above.

7                                         **COUNT FIVE**
                                   (Aiding and Abetting – Hybrid)
8
9    76) Plaintiff realleges all allegations heretofore set forth.

10   77) Hybrid and Hybrid's officers, directors and insiders aided and abetted in the violation of the

11   TCPA as follows:

12       a) The fax broadcaster and the persona authorizing the same committed a violation of the

13       TCPA; and

14
15       b) Hybrid and Hybrid's officers, directors and insiders knew that the Unsolicited Fax

16       violated the TCPA; and

17       c) Hybrid and Hybrid's officers, directors and insiders substantially assisted or encouraged

18       the primary tortfeasor by failing to discharge their duty to inform the securities market

19       that the unsolicited faxes were causing market manipulation of the HYBR stock.

20   78) Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

21
22   79) Defendants are responsible to Plaintiff and the Class as aiders and abettors for the same

23   amount of damages as the principal violators of the TCPA.

24                                        **COUNT SIX**
                                 (Aiding and Abetting – Superlattice)
25
     80) Plaintiff realleges all allegations heretofore set forth.

                                            -17-

81) Superlattice and Superlattice's officers, directors and insiders aided and abetted in the violation of the TCPA as follows:

a) The fax broadcaster and the persona authorizing the same committed a violation of the TCPA; and

b) Superlattice and Superlattice's officers, directors and insiders knew that the Unsolicited Fax violated the TCPA; and

c) Superlattice and Superlattice's officers, directors and insiders substantially assisted or encouraged the primary tortfeasor by failing to discharge their duty to inform the securities market that the unsolicited faxes were causing market manipulation of the SLAT stock.

82) Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

83) Defendants are responsible to Plaintiff and the Class as aiders and abettors for the same amount of damages as the principal violators of the TCPA.

## REQUEST FOR TRIAL BY JURY

84) Plaintiff requests a trial by a jury on all issues triable by a jury.

## RELIEF SOUGHT

Plaintiff prays for relief as follows:

a) For Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

b) For extraordinary, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to send unsolicited faxes; and

c)  For judgment in the amount of $500.00 for each member of the Class for incidental statutory damages for each individual unsolicited fax received from Defendants; and

d)  For judgment in the amount equal to three times the damages to Plaintiff and each member of the Class under the TCPA, to wit, $1,500.00 for each member of the Class; and

e)  For a declaration that Defendants have violated the TCPA because they failed to obtain express invitation or consent to send the subject facsimiles to Plaintiff or the Class; and

f)  For a declaration that Defendants violated the TCPA because they did not enjoy an established business relationship with Plaintiff or the members of the Class; and

g)  For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provide by law; and

h)  For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 24th 23rd day of June December, 2008.

PETER STROJNIK

_____
Peter Strojnik
Attorney for the Plaintiff

**MAY.VOL.3**

**May 21ˢᵗ 2008**

# The Energy Bull
*"Providing Bullish picks in the Energy and Alt-fuel sectors".*



Congratlations to those who followed and invested wisely in Energy Bull's most recent pick <u>OTCBB: VNGM</u> which is now up **66%** since we recently published it <u>April 1ˢᵗ 2008.</u> We are commited to bringing you the very best picks from the Energy and Alternative fuel sectors.

---

### Hybrid Technologies Inc.
### (OTCBB: HYBR)

Recent price:        $6.30
Target Price:        $6.90
Market Cap:          52.42M
Rating:              **Strong Buy**

---

## THE BULL'S BRAINS

For those of you unfamiliar with **The Energy Bull…**

"The Bull's Brains" is when we explain to you why we believe the current pick is a **WINNER**.

**Hybrid Technologies Inc. (OTCBB:HYBR)** is in the sexiest vertical going. Everyone's going green. From **George Clooney** (who's set to drive an HYBR smart car in Italy) to the everyday guy screaming about ridiculous gas prices -**$4.00/gallon a.k.a $100/barrel** . We consistently see green concept companies on the BB and Pinksheet market but few have a product line, money in the bank and international exposure like **HYBR** does. There are also rumors of shorted shares which could lead to a spectacular "short squeeze" that would drive the price of **HYBR** beyond analyst forecasts –See 2004 and 2006. With names like **Wal-Mart, NASA, Forbes, Business Week** and **Volkswagen** all in some way related to the company… it's just a matter of time before **HYBR** takes off. Did we mention this industry is valued at **$30 billion**. How about **Hybrid Technologies'** breakthrough which puts them miles (–bad joke yes we know) ahead of the competition.
**If you like what you saw with VNGM take a good hard look at HYBR and GET RIDING!**

## OTCBB:HYBR BREAKING NEWS

**Hybrid Technologies, Inc. (OTCBB:HYBR)** High Powered "Green Racing" Vehicle makes cover and feature story in NCMA's April Issue of Motorsports Industry News.

## WHO IS HYBR

**Hybrid Technologies, Inc** is the leader in the development and marketing of lithium-powered products worldwide.

### INVESTMENT HIGHLIGHTS

- **Hybrid Technologies, Inc (OTCBB:HYBR)** gets media coverage by **FOX, ABC** and **NBC** Affiliates during "Mean vs Green" competition at Lowe's Speedway.

- **The Company is the FIRST electric vehicle company to deliver a taxi.** Plus, it has recently delivered an all-electric PT-Cruiser to the New York Taxi and Limousine Commission.

- Already has lucrative contracts in place to supply its products to **NASA**, the **U.S. Environmental Protection Agency (EPA)** and the **U.S. Military**.

- **Hybrid Technologies, Inc. (OTCBB:HYBR)** unveiled its **LIV(TM)WISE** electric city car at the New York International Auto Show and received HUGE reviews from Experts – **Forbes Magazine, Yahoo! Finance** and **Jalopnik**

- **HYBR** was recently given a **"buy rating"** by a well-known and independent analyst firm, who raved about the Company's revenue growth over the past year and assigned it a **target price 270% higher then the current trading range**.

- **HYBR** has developed a successful Joint Venture with Volkswagen.

---

The Energy Bull is an independent marketing firm. This report contains forward-looking statements. Past performance does not guarantee future results. This report is based on The Energy Bulls independent analysis, and may, or may not be the opinion of The Energy Bull. This report is based on HYBR's web site, press releases and also relies on information supplied by sources believed to be reliable. The Energy Bull has been compensated twenty thousand dollars by a third party for the dissemination of this report. The information contained in this report is for informational purposes only, and should not be construed as an offer or solicitation to buy or sell securities. Investors should consult with an investment professional before investing any money.

## EXHIBIT 1

Case 2:08-cv-01017-ROS    Document 37    Filed 12/29/08    Page 85 of 85

# The Energy Bull
*"Providing Bullish picks in the Energy and Alt-fuel sectors".*



Congratlations to those who followed and invested wisely in Energy Bull's most recent pick <u>OTCBB: HYBR</u> which is now up **72%** since we recently published it <u>April 13st 2008</u>. We are commited to bringing you the very best picks from the Energy and Alternative fuel sectors.

| Superlattice Power Inc. (OTCBB: SLAT) | |
|---|---|
| Recent price: | $1.87 |
| Target Price: | $3.10 |
| Market Cap: | 215.42M |
| Rating: | **Strong Buy** |

## THE BULL'S BRAINS

For those of you unfamiliar with **The Energy Bull**...

"The Bull's Brains" is when we explain to you why we believe the current pick is a WINNER.

**Superlattice Power Inc. (OTCBB:SLAT) is taking the lithium industry buy storm! Here are the facts: The usual lead acid batteries being used for electric cars provide the consumer with about a 40-50 mile range per charge. The current Lithium Ion batteries provide 100-120 mile range per charge. The Supperlattice lithium battery will go up to a 200 mile range per charge – That's most than most of us drive every day.**

SLAT is a quite giant! This stock is seriously undervalued -Again we are committed to highlighting great energy and green stocks which are not only the leaders in a green world but will increase your portfolio in the process. Did we mention this industry is valued at $3 Trillion.

<u>http://www.superlatticepower.com</u>

**If you like what you saw with <u>HYBR</u> then take a good hard look at SLAT and GET RIDING!**

## OTCBB:SLAT BREAKING NEWS

**Superlattice Power Inc. (OTCBB:SLAT)** Developers of new "Superlattice Structure" Lithium Battery capable of increasing drive ranges in excess of 200Mi.

## WHO IS SLAT

**Superlattice Power Inc.** is an emerging leader in the development and marketing of the next generation of lithium-powered batteries worldwide.

## INVESTMENT HIGHLIGHTS

- **Price of Oil is Going Through the Roof!**
  Oil prices have increased approximately 100% in the last year and there's is no ceiling in sight. Most analysts believe that oil will soon break $150 range.

- **The Price of Lithium Shows Downward Trend**
  The price of lithium batteries has gone down 15% in the last year. With this trend continuing SLAT's new technology will become irresistible.

- **Competitive prices give SLAT and advantage**
  Superlattice batteries not only give you higher range but also cost less then regular lithium batteries.

- **Global Warming concerns require action**
  Lithium battery technology is the most practical and realistic alternative for now and the future. The sooner the global community adapts this technology, the sooner we'll get relief at the pump.

- **"Environmental Awareness"** is now a TRILLION DOLLAR industry.

The Energy Bull is an independent marketing firm. This report contains forward-looking statements. Past performance does not guarantee future results. This report is based on The Energy Bulls independent analysis, and may, or may not be the opinion of The Energy Bull. This report is based on SLAT's web site, press releases and also relies on information supplied by sources believed to be reliable. The Energy Bull has been compensated twenty thousand dollars by a third party for the dissemination of this report. The information contained in this report is for informational purposes only, and should not be construed as an offer or solicitation to buy or sell securities. Investors should consult with an investment professional before investing any money.
If you have received this alert in error and are not a member of The Energy Bull's recipient lists we apologize.
Please call 1-877-885-5720 to have your number removed.

**EXHIBIT 2**